UNITED STATES of America,
Plaintiff–Appellee,

v.

Jose Alfredo MALDONADO, aka Chino,
Defendant–Appellant.

No. 97–50440.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted May 5, 2000

Filed June 26, 2000

Sylvia Baiz, San Diego, California, for the defendant-appellant.

Jay Alvarez, Assistant United States Attorney, San Diego, California, for the plaintiff-appellee.

Before: WALLACE, TROTT and RONALD M. GOULD, Circuit Judges.

RONALD M. GOULD, Circuit Judge:

In proceedings before the United States District Court for the Southern District of California, Jose Alfredo Maldonado ("Maldonado") pleaded guilty to conspiracy to manufacture and distribute methamphetamine in violation of 21 U.S.C. § 846 and § 841(a)(1). The district court sentenced Maldonado to 168 months in custody.

Maldonado appeals his sentence, contending that: (1) the district court did not follow Rule 32(c) of the Federal Rules of Criminal Procedure; (2) the district court erred by imposing a two-level role enhancement; and (3) the government breached the plea agreement. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm, holding that: (1) a Rule 32(c)(1) finding was unnecessary because no matter was controverted; (2) the evidence was sufficient to support the district court's imposition of a two-level enhancement for role; and (3) Maldonado failed to demonstrate plain error because the government did not breach the plea agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

In 1996 the government investigated Maldonado's drug trafficking activities. During the investigation, Maldonado and others often met with a confidential informant and with undercover agents to negotiate price, quantity and quality of methamphetamine, and to deliver such methamphetamine to the agents. Additionally, the investigation revealed that Maldonado rented a residence where Maldonado and others "stepped on" methamphetamine, diluting it to extend its amount. Agents searched the residence and found chemicals, methamphetamine manufacturing equipment, scales, measuring devices, bags used to package drugs, 96 grams of finished methamphetamine and 611 grams of amphetamine.

Mario Vargas ("Vargas") and Leonel Lopez–Lopez ("Lopez") participated in the drug trafficking. Maldonado usually did the negotiating and provided the drugs to the agents. Vargas was often present during meetings with the undercover agents, spoke with the agents about drug quality and quantity, served as an English language interpreter, delivered drugs to the agents, received drug payments from the agents and delivered drug payments to Maldonado. Lopez, who ordinarily worked as Maldonado's domestic "handy man," was present during some negotiations and deliveries of drugs to the confidential source. Additionally, once, when Maldonado told him to do so, Lopez gave a package of drugs to someone in a car outside the residence.

Maldonado entered into a plea agreement with the government whereby he agreed to plead guilty and, among other things, the government agreed to recommend a base offense level of 32 and no supervisory role enhancement. The plea agreement expressly stated that the government's sentencing recommendations would not be binding on the district court: "the recommendation made by the Government is not binding on the court, and it is uncertain at this time what defendant's sentence will be."

At Maldonado's sentencing hearing, the district court inquired into a possible presentence report ("PSR") discrepancy regarding the calculation of the base offense level based on the amount of drugs seized. The PSR had quoted the amount of drugs seized as 3,372 kilograms, but at the hearing the parties acknowledged that the actual marijuana equivalency for the amount of drugs seized was 3,091 kilograms.[1] Although Maldonado's counsel argued that "the amount that we pled guilty for was an amount that warrants a finding of a level

---

1. The Court: I want to know is this thing factually correct? Was there 224 grams of methamphetamine delivered by Mr. Lopez at the request of your client, yes or no?
   Mr. Molino [Maldonado's counsel]: Yes, your Honor.
   The Court: Was there found in the house when it was raided, was there found 96 grams of finished methamphetamine, yes or no?
   Mr. Molino: Yes, your Honor.

The Court: Was there found–
The government: Your Honor, I don't know if that's correct or not.... I did recalculate, and obviously I should not make a mathematician because I had originally felt that it was.... I recalculated it. The Probation's amount is incorrect. However, it is level 34. I was incorrect. I stand by my plea agreement at recommending a level 32....

32, not a level 34 as recommended by the probation report," Maldonado's counsel agreed that, when the correct marijuana equivalency was used, the base offense level calculated to 34.[2]

At Maldonado's sentencing hearing the district court also focused on whether the evidence supported a two-level supervisory role enhancement. The government recommended that there be no role enhancement because Maldonado was "a street dealer, and Mr. Lopez basically worked for him more in a non-drug capacity than anything else," and "Vargas was a neighbor who worked with [Maldonado] and got caught up in it, but he was basically on equal footing with Mr. Maldonado." The district court asked: "is the reason that you are not recommending [a role enhancement] ... because of a plea bargain?" The government responded to the district court's direct inquiry by acknowledging that the government's recommendation of no role enhancement was not

because of the guideline analysis, but because of its plea agreement: "That is correct, your Honor.... That was our plea bargain, your Honor."[3]

The district court rejected the government's recommendation of a base offense level of 32 and set the base offense level at 34 in accord with the facts that were honestly and correctly acknowledged in the written objections and at the hearing. The district court also rejected the PSR recommendation of a four-level supervisory role enhancement and the government's recommendation of no supervisory role enhancement. Instead, the district court increased Maldonado's sentence by a two-level enhancement to 36 because of his supervisory role.

## DISCUSSION

### A. Rule 32(c)

■ Maldonado asserts that, because the probation department erred in calcu-

---

The Court: Are you saying that even if the numbers are changed, it's still a level 34?

The government: It's still a level 34, your Honor.

The Court: What do you say to that, Mr. Molino?

Mr. Molino: That is true, your Honor.

The Court: What?

Mr. Molino: That is true. We're talking about an equivalency amount of 3,091 kilograms of methamphetamine.

The Court: You mean of marijuana?

Mr. Molino: Of marijuana.

The government: That's correct your Honor.

The Court: And that is a level 34?

The government: It is, your Honor.

Mr. Molino: It is, your Honor.

**2.** *See supra* note 1. The government's written objections to the PSR had also clarified the drug quantity issue consistent with the government's position at the hearing. The government stated in its written objections that the PSR calculations were in error, as were the government's calculations before making the plea agreement. The government also stated that "[the] correct equivalency amount is actually 3,091 kilograms," and thus acknowledged that the "base offense level is properly 34 as found by the probation officer." The Government acknowledged its er-

ror in calculating the drug quantities but said it would "stand by the agreement that it made with the defendant" and "recommend that the base offense be set at 32."

**3.** The government's written objections to the PSR also had consistently clarified the facts regarding a supervisory role enhancement. The government had objected to the probation officer's recommendation in the PSR of a four-level enhancement for Maldonado's alleged role as a leader or organizer, noting that "the Probation Officer appears to make that recommendation based upon the claim that Maldonado 'was an active participant in a sophisticated and organized scheme' and further that Maldonado's role was that of a 'manufacturer/distributor.'" The government's written objections stated: "Apparently, the government has failed to provide the Probation Officer with an accurate description of the facts." The written objections clarified that, where the PSR stated that five other participants were involved, in fact there were only two others, Vargas and Lopez. Further, Lopez "worked for [Maldonado] in a legitimate capacity as well, i.e., caring for Maldonado's children." The government's clarifications thus indicated that Maldonado's activities did not involve five or more participants and were not as extensive as the PSR recited, but did not negate all supervisory activity.

lating the base offense level, and the district court adopted the recommended base offense level without a specific finding regarding the error, the district court did not follow Fed.R.Crim.P. 32(c)(3)(D).[4] We disagree.

The issue is whether the district court followed current Rule 32(c)(1), the counterpart to the old Rule 32(c)(3)(D) cited by the parties. Rule 32(c)(1) provides in part:

> At the sentencing hearing, the court must afford counsel ... an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any *unresolved objections* to the presentence report.... For each *matter controverted,* the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing.

Fed.R.Crim.P. 32(c)(1) (emphasis added).

Here, there was no unresolved objection, nor any controverted matter, regarding the base offense level set forth in the PSR. All parties initially erred in calculating the marijuana equivalency of the drugs. However, at sentencing all parties agreed on the amount of drugs for which Maldonado was accountable, and the resulting base offense level of 34. At the sentencing hearing Maldonado in words and substance merely asserted that the PSR recommendation of a base offense level of 34 differed from the plea agreement recommendation of a base offense level of 32, not that there was error in the PSR's recommended base offense level. Because the district court relied on an accurate PSR recommendation upon which the parties agreed, a base offense level of 34, no "matter [was] controverted," making a Rule 32(c)(1) finding unnecessary.

## B. Role enhancement

■ Maldonado contends that the district court erred by applying a two-level supervisory role enhancement to his sentence. Maldonado argues that the facts, as set forth in the PSR and modified by the parties' written objections and oral assertions, are insufficient to support the role enhancement. This contention lacks merit.

■ We review for clear error the district court's determination whether the defendant qualifies for a role adjustment under the United States Sentencing Guidelines ("Guidelines"). *See United States v. Ruelas,* 106 F.3d 1416, 1419 (9th Cir.1997). Review under the clearly erroneous standard is deferential, "requiring for reversal a definite and firm conviction that a mistake has been made." *United States v. Palafox–Mazon,* 198 F.3d 1182, 1186 (9th Cir.2000).

■ The Guidelines provide for an increase in a defendant's base offense level by two levels if the defendant "was an organizer, leader, manager, or supervisor in any criminal activity...." U.S.S.G. § 3B1.1(c). An increase of offense level for an aggravating role is appropriate if there is sufficient evidence to support a finding that the defendant occupied one of the four specified roles. *See* U.S.S.G. § 3B1.1 App. n. 2; *United States v. Harper,* 33 F.3d 1143, 1150 (9th Cir.1994). When a defendant supervises other participants, she or he need exercise authority over only one of the other participants to merit the adjustment. *See United States v. Cooper,* 173 F.3d 1192, 1207 (9th Cir. 1999). A single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement. *See, e.g., United States v. Beltran,* 165 F.3d 1266, 1271 (9th Cir.1999).

---

**4.** Inexplicably, the parties incorrectly cite to Rule 32(c)(3)(D). That rule applies to offenses committed before November 1, 1987. Maldonado committed his offense in 1996. Rule 32(c)(1) applies to Maldonado's offense.

The parties' citation error does not change the disposition of the issues presented. *See United States v. Karterman,* 60 F.3d 576, 583 n. 4 (9th Cir.1995).

Although the government must present evidence sufficient to support the upward adjustment by a preponderance of the evidence, *see United States v. Howard*, 894 F.2d 1085, 1090 (9th Cir.1990), the district court may, without error, rely on evidence presented in the PSR to find by a preponderance of the evidence that the facts underlying a sentence enhancement have been established. *See United States v. Marin–Cuevas*, 147 F.3d 889, 895 (9th Cir. 1998); *United States v. Milton*, 153 F.3d 891, 897 (8th Cir.1998) (where government and defendant both opposed PSR recommendation, the court did not err by relying on facts presented in the PSR to establish a role enhancement under U.S.S.G. § 3B1.1).

Here, the district court did not clearly err in finding that there was sufficient evidence to enhance Maldonado's sentence for his leadership role in the offense. Maldonado usually did the negotiating and provided the drugs to the agents. The evidence demonstrates that Vargas worked for Maldonado and attended many meetings with Maldonado involving drug trafficking. Tellingly, when the agents bought drugs during these meetings, Vargas received payment and delivered the money to Maldonado. Although less involved than Vargas, Lopez worked under Maldonado's direction, and at least once delivered drugs to a buyer at Maldonado's request. This evidence is sufficient for the district court properly to have applied the two-level role enhancement to Maldonado's sentence.

### C. Breach of plea agreement

Maldonado contends that the government breached the plea agreement because it agreed to recommend a base offense level of 32 but, at sentencing and in its written objections, did not object to the validity of the PSR's recommendation of a base offense level of 34.

■ With few narrow exceptions, breach of plea agreement issues not presented to the trial court cannot be raised for the first time on appeal.[5] *See United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991).[6]

■ Here, Maldonado's counsel stated: "Your Honor, the amount that we pled guilty for was an amount that warrants a finding of a level 32, not a level 34 as recommended by the probation report." This statement, however, merely points to a discrepancy between the PSR and the plea agreement. It does not assert that the government breached its plea agreement. Accordingly, we hold that Maldonado waived the breach of plea agreement issue.

■ Because Maldonado waived the breach of plea agreement issue, we review his claim for plain error. *See United States v. Koenig*, 952 F.2d 267, 272 (9th Cir.1991). "A plain error is 'a highly prejudicial error affecting substantial rights.'" *United States v. Morris*, 827 F.2d 1348, 1350 (9th Cir.1987) (quoting *United States v. Sherman*, 821 F.2d 1337, 1339 (9th Cir. 1987)). For the reasons that follow, we conclude that there was no such error here.

■ When the government agrees to recommend a sentence pursuant to a

---

**5.** Despite the general rule against review on appeal of issues not raised before the district court, the Ninth Circuit has recognized exceptions if: (1) exceptional circumstances exist regarding why the issue was not raised in the trial court; (2) the new issue arises while the appeal is pending because of a change in the law; (3) the issue presented is purely one of law, and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the trial court; or (4) plain error occurred and an injustice might otherwise

occur. *See United States v. Flores–Payon*, 942 F.2d 556, 558 (9th Cir.1991).

**6.** The plea agreement between Maldonado and the government also provided that "[i]f defendant believes the Government's recommendation is not in accord with this agreement, defendant will object at the time of sentencing; otherwise the objection will be deemed waived."

plea bargain, it need not explain its reasons nor make the recommendation enthusiastically. *See United States v. Benchimol,* 471 U.S. 453, 455, 105 S.Ct. 2103, 85 L.Ed.2d 462 (1985). Moreover, despite a plea agreement to make certain recommendations, the government has a duty to ensure that the court has complete and accurate information, enabling the court to impose an appropriate sentence. *See, e.g., United States v. Read,* 778 F.2d 1437, 1441–42 (9th Cir.1985) (prosecutor is obligated to reveal to sentencing judge facts concerning defendant's activities between conviction and sentencing despite government's plea agreement to "take no position on what sentence would be imposed" because parties could not have reasonably understood plea agreement to include a promise to withhold such information).

Here, the plea agreement obligated the government to recommend a base offense level of 32. At the sentencing hearing and in its written objections the government acknowledged its calculation error and stated that it stood by its plea agreement to recommend a base offense level of 32. The district court asked the government: "Are you saying that even if the numbers are changed, it's still a level 34?" The government responded: "It's still a level 34."

 By honestly providing the correct calculations and responding to the district court's direct questions, the government did not breach the plea agreement; rather, it fulfilled its obligation according to *Read.* 778 F.2d at 1442; *see also United States v. Pompey,* 121 F.3d 381, 382 (8th Cir.1997) (government did not breach a plea agreement by providing relevant information to the probation officer, and any such bar would be contrary to public policy). We conclude that a plea agreement does not bar the government from honestly answering the district court's questions. To the contrary, honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded or impaired by a plea agreement. Thus, we hold there could be no plain error.

## CONCLUSION

The district court's imposition of Maldonado's sentence is AFFIRMED.