**UNITED STATES of America, Plaintiff–Appellee–Cross–Appellant,**

v.

**Jerry Lee MORGAN, Defendant–Appellant–Cross–Appellee.**

**Nos. 99–10509, 99–10553**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 10, 2001

Filed Jan. 31, 2001

Michael K. Powell, Assistant Federal Public Defender, Reno, Nevada, for the defendant-appellant/cross-appellee.

Brian L. Sullivan, Assistant United States Attorney, Reno, Nevada, for the plaintiff-appellee/cross-appellant.

Before: GOODWIN, GRABER, and PAEZ, Circuit Judges.

GRABER, Circuit Judge:

Defendant Jerry Lee Morgan was convicted by a jury of one count of kidnapping, 18 U.S.C. § 1201(a)(1), and one count of carjacking, 18 U.S.C. § 2119(2). The district court imposed concurrent sentences of 328 and 300 months in prison. Defendant appeals his conviction and sentence; the government cross-appeals the sentence. We affirm on the appeal, reverse on the cross-appeal, and remand for resentencing.

## FACTUAL AND PROCEDURAL HISTORY

Defendant Jerry Lee Morgan and his co-defendant, Billy Johnson, met the victim, Frank Klein, at a truck stop in Cheyenne, Wyoming, on a freezing December night in 1998. Defendant approached Klein and asked him to jump-start Defendant's car. Klein agreed, and Defendant left, saying that he would return with jumper cables. Because it was cold outside, Klein and Johnson waited for Defen-

dant in Klein's car. Defendant returned, informed Klein that someone else would bring jumper cables soon, and asked if he could wait in the car with Klein and Johnson. Klein agreed. Once Defendant was inside the car, Johnson produced a large knife and held it to Klein's throat. Defendant told Klein not to do anything stupid or he would be killed.

Defendant removed a license plate from his own car and transferred his luggage from his car to Klein's. Klein was instructed to get on Interstate 80 and drive west. He did so. When Klein had driven a few miles, Defendant told him to pull over. After Klein stopped the car, Defendant and Johnson bound his wrists with duct tape and placed him in the passenger seat and, later, in the back seat. Defendant began driving. Klein heard Defendant and Johnson arguing about what they were going to do. Defendant urged that they should kill Klein.

When the car reached Salt Lake City, Utah, Defendant bound Klein with fresh duct tape and forced him into the trunk. Later, when the car stopped in Carlin, Nevada, Klein complained that he could not feel his hands and legs because of the cold and asked if he could sit in the car. When Johnson left the car to use the restroom, Defendant opened the trunk and beat Klein on the head between 40 and 50 times with a piece of metal pipe, causing him to bleed heavily. Then Defendant closed the trunk. After Johnson returned, Defendant began driving again.

Sometime later, Defendant stopped at a rest area. Again, Johnson left to use the restroom, and again Defendant opened the trunk and beat Klein on the head with a piece of metal pipe. When Johnson returned this time, Defendant pulled Klein's head back and told Johnson to cut him. Johnson made several shallow cuts across Klein's throat and stabbed him in the shoulder.

Defendant and Johnson shut the trunk, returned to the passenger compartment of the car, and drove to an area near Emigrant Pass, Nevada, just off Interstate 80.

They stopped there, and Defendant opened the trunk. Klein pretended to be dead. Defendant and Johnson removed Klein from the trunk, kicked and rolled him down a hill, and covered him with snow, sticks, and brush. Defendant and Johnson drove away.

After waiting for 15 or 20 minutes, Klein dug himself out, crawled back to the highway, and flagged down a passing snowplow. He was taken to a hospital. There, his cuts were stitched and stapled, and he was treated for frostbite. The hospital took x-rays of Klein's chest, neck, and skull, which were negative. However, a subsequent CT scan revealed a fracture of the frontal sinus, in the area of the right eyebrow. Klein was discharged from the hospital three days later.

An all-points bulletin was broadcast to law enforcement agencies in northern Nevada. The next morning, Chris Murphy, Chief of Police of Carlin, Nevada, saw Klein's car at a truck stop in Carlin. He went inside the truck stop and saw Defendant, but did not approach him because he had not received a description of Defendant. According to Murphy, Defendant saw him, watched him intently for a short time, and then left the truck stop.

Johnson was found, questioned, and arrested in the truck stop. Defendant was arrested later that morning in Elko, Nevada.

Defendant and Johnson were indicted on charges of kidnapping and carjacking. Both entered pleas of not guilty. Defendant filed a motion to sever, which became moot when Johnson pleaded guilty and agreed to testify for the government.

At trial, Defendant testified. He claimed that he did not plan the kidnapping, but was forced to participate by Johnson, who had attacked him in his motel room, tied him up, threatened him with a gun, and raped him twice. He also testified that Johnson had threatened Defendant and Klein with a gun on several occasions during the kidnapping and that

Johnson, not Defendant, had beaten Klein. Finally, Defendant denied having seen Police Chief Murphy at the truck stop in Carlin and stated that he had left the truck stop because he was fleeing from Johnson.

Klein, Johnson, Murphy, and other witnesses testified for the prosecution. Their testimony contradicted Defendant's in most respects. For example, Klein testified that Defendant had beaten him, that Defendant had appeared to be in charge, and that he had not seen Johnson with a gun. Johnson testified that he had not had a gun, that he had not attacked or raped Defendant, that it was Defendant who had suggested that they kidnap and carjack Klein, and that only Defendant had beaten Klein. Murphy testified that Defendant had seen him in the truck stop and had watched him intently before leaving.

At the close of the evidence, Defendant requested and received a jury instruction on the defense of coercion. The jury rejected that defense and found Defendant guilty. In its sentencing memorandum, the government requested a six-level upward adjustment for "permanent or life-threatening bodily injury," and two-level adjustments for "obstruction of justice," "aggravating role," and "vulnerable victim." The district court held a sentencing hearing. Afterward, the court denied the "vulnerable victim" adjustment but imposed "obstruction of justice" and "aggravating role" adjustments. The court also imposed a four-level adjustment for "serious bodily injury," rather than the six-level adjustment for "permanent or life-threatening bodily injury," which the government had requested.

After imposing those upward adjustments, the court sentenced Defendant to 328 months in prison on the kidnapping charge and 300 months in prison on the carjacking charge, to run concurrently. The court sentenced Johnson to 189 months in prison.

Defendant timely appealed, challenging his conviction and sentence. The government timely cross-appealed with respect to the district court's refusal to impose a six-level adjustment for "permanent or life-threatening bodily injury."

## DISCUSSION

### I. *The Connection Between the Car and Interstate Commerce*

The federal carjacking statute, 18 U.S.C. § 2119, applies to "[w]hoever, with the intent to cause death or serious bodily harm[,] takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation." Defendant argues that the district court lacked jurisdiction because the government failed to prove a sufficient connection between Klein's car and interstate commerce.

■■■ As a threshold matter, we disagree with Defendant's assertion that our review is de novo. Defendant is not arguing that 18 U.S.C. § 2119 is unconstitutional under the Commerce Clause,[1] or that the statute is insufficient in all cases to confer jurisdiction on district courts. Rather, he is challenging the sufficiency of the government's evidence that *this* car was "transported, shipped, or received in interstate or foreign commerce." That is a question of fact. *See United States v. Nukida,* 8 F.3d 665, 672 (9th Cir.1993) (stating, in a prosecution for tampering with consumer products affecting interstate commerce, that "the determination of whether [the defendant's] actions resulted in sufficient effects on interstate commerce is essentially factual"); *see also United States v. Newton,* 65 F.3d 810, 811–12 (9th Cir.1995) (in a prosecution for carjacking, treating the question of the car's nexus to interstate commerce as a question of fact). Because Defendant is challenging the suf-

---

1. Nor would such a challenge be successful. *See United States v. Oliver,* 60 F.3d 547, 550 (9th Cir.1995) (affirming the constitutionality of 18 U.S.C. § 2119 under the Commerce Clause).

ficiency of the government's evidence on this factual element of the offense, the appropriate standard of review is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the government proved a sufficient connection to interstate commerce beyond a reasonable doubt. *Id.* at 812.

 Defendant acknowledges that he failed to challenge the sufficiency of the government's evidence at trial. "The proper way for [a defendant] to challenge the sufficiency of the government's evidence pertaining to the jurisdictional element of affecting interstate commerce is a motion for acquittal under Rule 29, presented at the close of the government's case-in-chief." *Nukida,* 8 F.3d at 672–73. Because Defendant did not move for a judgment of acquittal, we review for plain error. *United States v. Oliver,* 60 F.3d 547, 551 (9th Cir.1995). Plain error is (1) error that is (2) plain or, in other words, "clear" or "obvious" under current law, and (3) affects substantial rights. *United States v. Olano,* 507 U.S. 725, 733–35, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

 Here, there was no error. "Section 2119 is unusually plain. By its terms, all it requires by way of interstate nexus is a single interstate crossing." *Newton,* 65 F.3d at 811. Defendant concedes that the government proved that Klein's car had crossed state lines at least twice before the carjacking; once from Wisconsin to Minnesota for a funeral and once, in May 1998, when Klein drove from Wisconsin to Wyoming. And the car crossed state lines on a third occasion: during the carjacking, which began in Wyoming and ended in Nevada. Similar evidence was held to be sufficient in *Newton:* "The [car] in this case twice passed from California to other states. Both times it did so in interstate commerce, notwithstanding the fact that the purpose of the trips may have been

recreational rather than purely commercial." *Id.* at 811–12. Consistent with *Newton,* we conclude that the government presented sufficient evidence to establish that Klein's car "has been transported, shipped, or received in interstate or foreign commerce" and thereby to satisfy the jurisdictional requirements of 18 U.S.C. § 2119.[2]

## II. *The Enhancement for "Aggravating Role"*

Under U.S.S.G. § 3B1.1(c), a sentencing court may impose a two-level upward adjustment "[i]f the defendant was an organizer, leader, manager, or supervisor in any criminal activity" involving fewer than five participants. Application Note 4 states that relevant factors under this Guideline "include the exercise of decision making authority, the nature of participation in the commission of the offense, ... the nature and scope of the illegal activity, and the degree of control and authority exercised over others." U.S.S.G. § 3B1.1(c), cmt. n. 4.

 This court reviews for clear error a district court's determination that a defendant qualifies for an adjustment under U.S.S.G. § 3B1.1(c). *United States v. Maldonado,* 215 F.3d 1046, 1050 (9th Cir. 2000). For such an adjustment to be appropriate, "there must be evidence to support a finding that the defendant occupied one of the four specified roles, not merely that the defendant was more culpable than others who participated in the crime." *United States v. Harper,* 33 F.3d 1143, 1150 (9th Cir.1994). "When a defendant supervises other participants, she or he need exercise authority over only one of the other participants to merit the adjustment." *Maldonado,* 215 F.3d at 1050. Further, "[a] single incident of persons acting under a defendant's direction is suf-

---

2. Defendant also argues that *Newton* no longer is good law following the Supreme Court's decision in *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995). But *Newton* post-dates *Lopez.* So does *Oliver,* which reaffirmed the constitutionality of 18 U.S.C. § 2119 in the light of *Lopez. Oliver,* 60 F.3d at 550.

ficient evidence to support a two-level role enhancement." *Id.*

■■■ Before imposing the enhancement, the district court found, among other facts, that (1) the carjacking was Defendant's idea; (2) Defendant's actions during the incident were more "serious" than Johnson's; (3) Defendant was "in a position of control" with respect to Johnson, as evidenced by Johnson's and Klein's testimony; and (4) Defendant told Johnson to cut Klein's throat, which Johnson did. Under *Maldonado,* even that single incident is sufficient to support the enhancement.

Defendant's argument establishes only that he disagrees with the district court's assessment of the evidence. But we are reviewing for clear error, and the district court's findings are not clearly erroneous.

III. *The Enhancement for "Obstruction of Justice"*

■■■ Under U.S.S.G. § 3C1.1, a district court may impose a two-level enhancement on a defendant who "willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice during the course of the investigation, prosecution, or sentencing of the instant offense of conviction." Under Application Note 4, one example of conduct to which the enhancement applies is perjury. U.S.S.G. § 3C1.1, cmt. n. 4. "In order to find perjury, the district court must find that the defendant's testimony was (1) false, (2) material and (3) willful." *United States v. Shannon,* 137 F.3d 1112, 1119 (9th Cir.1998). A district court's determination that a defendant obstructed justice under this Guideline is a factual determination that we review for clear error. *Id.*

■■■ Here, the district court found that Defendant willfully perjured himself and that the perjury was material. Specifically, the court found that Defendant committed perjury when he testified that he did not participate in planning the carjacking; that Johnson assaulted him with a gun and raped him; that Johnson was the one who beat Klein; and that he never saw the Police Chief in the Carlin truck stop, but fled because he wanted to escape from Johnson. The court also addressed the requirements of willfulness and materiality.

The district court's findings are not clearly erroneous. Defendant's primary argument is that his lies were not material. But, to take one example, Defendant's testimony that Johnson was the one who beat Klein with a pipe clearly was material. Defendant's main defense was that he was coerced by Johnson. Johnson's and Klein's testimony, which the trial court credited, established that Defendant beat Klein while Johnson was away using the restroom. That testimony contradicted Defendant's assertion that he was acting under Johnson's orders; and Defendant's false testimony that Johnson was the one who beat Klein was, therefore, material to his defense of coercion.

The district court made appropriate, detailed findings in support of this sentencing enhancement. Those findings are supported by evidence and are not clearly erroneous.

IV. *The Enhancement for "Permanent or Life–Threatening Bodily Injury"*

■■■ If the victim of a carjacking sustains bodily injury, the sentencing court may increase the offense level by four if the injury is "serious," and by six if the injury is "permanent or life-threatening." U.S.S.G. § 2B3.1(b)(3). Here, the government requested the six-level enhancement, but the district court imposed the four-level enhancement instead. The government argues, on cross-appeal, that the district court should have imposed the six-level enhancement.

■■■ The Guidelines define "permanent or life-threatening bodily injury" as injury involving a substantial risk of death; loss or substantial impairment of the function of a bodily member, organ, or mental faculty that is likely to be permanent; or an obvious disfigurement

that is likely to be permanent. In the case of a kidnapping, for example, maltreatment to a life-threatening degree (*e.g.*, by denial of food or medical care) would constitute life-threatening bodily injury.

U.S.S.G. § 1B1.1(h), cmt. n. 1(h). A district court's determination whether a victim has sustained a "permanent or life-threatening bodily injury" is a determination of fact that we review for clear error. *United States v. Hinton*, 31 F.3d 817, 825–26 (9th Cir.1994). A district court's interpretation of the Sentencing Guidelines is reviewed de novo. *United States v. Kakatin*, 214 F.3d 1049, 1051 (9th Cir.2000).

▮▮▮▮ The district court stated that it is a "close call" whether the six-level enhancement applies, but ultimately decided that it does not apply. Specifically, the court found that *Klein's injuries themselves* were not life-threatening, but that Klein's *situation* was life-threatening because he was buried in snow in a remote gully on a freezing night. The court stated: "It probably was more likely a life-threatening injury because of the circumstances of kicking Mr. Klein down into this gully than the injuries which he had suffered before that was done."[3]

It is clear from its discussion that the court believed that the "life-threatening" enhancement applies to only two types of injuries: (1) injuries that are severe enough to be "life-threatening," regardless of the circumstances in which they are inflicted; and (2) injuries that are less severe, but are nevertheless "life-threatening" because of the circumstances in which they are inflicted. It also is clear that the district court believed that this enhancement does *not* apply when the "circumstances" themselves are life-threatening, irrespective of any other injury that the victim might have suffered. With this understanding, the court asked "whether it was the circumstances or whether it was really the injury that made this life-threat-

ening." Because the court found that Klein's "circumstances" were more dire than his injuries, it concluded that it could not grant the enhancement for "life-threatening injury."

We do not agree that the court's authority is so limited. The Guideline that applies to carjacking states: "In the case of a kidnapping, for example, maltreatment to a life-threatening degree (*e.g.*, by denial of food or medical care) would constitute life-threatening bodily injury." U.S.S.G. § 1B1.1(h), cmt. n. 1(h). In other words, the Guideline explicitly contemplates that, during a kidnapping, deprivation of the essentials of life or similar "maltreatment" may by itself be a "life-threatening bodily injury," whether or not the perpetrator also has inflicted other injuries.

Klein was locked in the trunk of a car in freezing weather for many hours. During that time he was denied fresh air, food, water, medical care, and heat. Then he was dumped in a ditch in a remote area on a freezing night and covered with snow and debris; the same deprivations continued. Although the district court considered those acts to be the "circumstances" in which the beatings took place, the court considered only the beatings, but not the deprivations, to be the relevant injuries. We conclude, however, that the deprivations themselves were "maltreatment" of the sort contemplated in the Guideline. If they were "maltreatment to a life-threatening degree," then they would justify a six-level enhancement under U.S.S.G. § 2B3.1(b)(3), irrespective of the other injuries that Klein suffered. By concluding that it lacked the authority to depart upward based solely on that form of maltreatment, the district court erred as a matter of law.

Although the district court appears to have believed that the "circumstances" in which Defendant and Johnson placed Klein were life-threatening, we cannot be sure

---

**3.** The district court also found that Klein's injuries were not "permanent." That finding is not clearly erroneous.

on this record. Accordingly, we remand for the district court to consider whether Defendant's "maltreatment" of Klein was life-threatening.

Our remand is limited to that question. The district court's other findings with respect to this Guideline are not clearly erroneous. Specifically, we hold that the district court did not clearly err in finding that (1) Klein's other injuries (cuts, fractured skull, etc.) were not "life-threatening"; and (2) those injuries were not "permanent."

Judgment of conviction AFFIRMED; sentence VACATED and REMANDED on cross-appeal.