**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Rodolfo CAMARA, Defendant–**
**Appellant.**

No. 99–10510.
D.C. No. CR–97–00951–HG.

United States Court of Appeals,
Ninth Circuit.

Argued and Submission Deferred
Oct. 31, 2001.

Resubmitted May 9, 2002.

Decided June 26, 2002.

Before THOMPSON, O'SCANNLAIN, and BERZON, Circuit Judges.

MEMORANDUM *

Rodolfo Camara appeals his convictions and sentence for distribution and possession with intent to distribute methamphetamine in violation of 21 U.S.C. § 841(a)(1). The facts and prior proceedings are known to the parties; they are not recited herein, except as necessary.

I

Camara contends that he was placed in double jeopardy in that he was retried after being acquitted of conspiring to distribute methamphetamine. Howev-

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36–3.

er, it is well established that "a substantive crime and a conspiracy to commit that crime are not the 'same offense' for double jeopardy purposes." *United States v. Felix,* 503 U.S. 378, 389, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *see also United States v. Arbelaez,* 812 F.2d 530, 533–34 (9th Cir. 1987) (rejecting identical challenge).

## II

■ Camara claims that there was a constructive amendment, or alternatively a fatal variance, to the indictment. Camara essentially argues that the government tried him on a conspiracy theory during the second trial. Camara, of course, was not charged with conspiracy in that he was acquitted of this count during the first trial. According to Camara, the government's reliance upon a conspiracy theory resulted in an impermissible broadening of the indictment.

The record does not support Camara's contention. The government's evidence related to the substantive offenses of distribution and possession with the intent to distribute. At no point during the second trial did the government present a conspiracy theory to the jury or to the court. There was no constructive amendment or fatal variance to the indictment. *See, e.g., United States v. Antonakeas,* 255 F.3d 714, 721–23 (9th Cir.2001).

## III

■ Camara claims that his convictions are not supported by sufficient evidence. Camara was convicted of distributing methamphetamine on July 14, 1997. On that date, Camara left with Cajigal to meet with Agent Haleck with the express understanding that Haleck was to purchase an ounce of methamphetamine. The two traveled in a car rented by Camara a few days before. Upon arriving, Camara directed Cajigal to Gines, their associate who arrived by separate car. While Cajigal actually handed the drugs to Haleck, they were stored under Camara's car seat. Camara later warned Cajigal that Haleck might be an undercover officer.

Camara was also convicted of distribution and possession with the intent to distribute methamphetamine on July 16, 1997. On that date, Camara was with Cajigal and Lopez as they talked about making another sale to Haleck. Lopez later placed the drugs in an envelope and handed it to Camara. A few minutes later Camara handed the envelope to Cajigal, telling him, "Let's go. Let's finish this." The two then traveled in the same rental car to meet Haleck, whereupon they were arrested. After Camara's arrest, he allegedly pressured his associates to lie about his role in the transactions. Nonetheless, Cajigal and Lopez both testified that Camara was "involved" in the drug sales.

Camara's conduct suggests that he was more than a mere passive observer who was simply along for the ride. For example, he warned about Haleck, directed Cajigal to Gines, rented the car used in the transactions,[1] and actively handled the drugs in the second sale. Most importantly, his statement, "Let's go. Let's finish this," strongly suggests that he was not simply a passive observer. In short, a reasonable jury could infer from Camara's actions and statements that he actively participated in the transactions, either as a lookout or simply as an extra hand to provide assistance when it was needed. *See, e.g., United States v. Herrera–Gonzalez,* 263 F.3d 1092, 1098 (9th Cir.2001),

---

1. While there is no direct evidence that Camara rented the car for the purpose of facilitating the drug transactions, it is nonetheless probative of his role in the offense.

*cert. denied,* —— U.S. ——, 122 S.Ct. 928, 151 L.Ed.2d 891 (2002).

## IV

■ Camara argues that the court erred in failing to instruct the jury properly on aiding and abetting. On the contrary, the court gave a standard aider and abettor instruction. *See* Ninth Circuit Model Jury Instructions § 5.1. Importantly, the instructions stressed that the jury could not find Camara guilty for merely associating with persons involved in the crime. Further, the instructions clarified that the jury had to agree unanimously as to which individual Camara aided and abetted. The instructions were not misleading or erroneous. *Cf. United States v. Avila–Macias,* 577 F.2d 1384, 1390–91 & nn. 4–5 (9th Cir.1978) (approving substantially similar instruction).

## V

■ Camara challenges the admission of his associates' guilty pleas to conspiracy. The pleas were not admitted for an improper purpose. The jury was properly instructed that the pleas were not evidence of Camara's guilt, and were only relevant to his associates' credibility. Further, the government never suggested at trial that the pleas were evidence of Camara's guilt. Under these circumstances, Camara is not entitled to relief. *See, e.g., United States v. McCown,* 711 F.2d 1441, 1451 (9th Cir. 1983).

## VI

■ Camara claims that the district court improperly applied an enhancement for obstruction of justice under § 3C1.1 of the Sentencing Guidelines. Camara's associates testified that he pressured them to lie on his behalf. *See id.* n. 4(a), (b) (explaining that the enhancement covers

"unlawfully influencing a . . . witness" and "attempting to suborn perjury"). While Camara argues that he simply told his associates to tell the truth, the district court's contrary finding is not clear error. *See, e.g., United States v. Morgan,* 238 F.3d 1180, 1187 (9th Cir.), *cert. denied,* —— U.S. ——, 122 S.Ct. 146, 151 L.Ed.2d 97 (2001).

## VII

■ Camara contends that the district court improperly refused to apply the safety valve provision under § 5C1.2 of the Sentencing Guidelines. A court may only apply the safety valve if it finds that the defendant truthfully provided to the government all information and evidence concerning the offense before the time of sentencing. *See id.* § 5C1.2(5).

The district court found Camara's description of his limited role in the offense to be implausible. Accordingly, the court found that Camara is likely withholding material information concerning the offense. On this record, we cannot conclude that the district court's finding is clearly erroneous. *See, e.g., United States v. Lopez,* 163 F.3d 1142, 1143–44 (9th Cir.1998).

## VIII

■ Camara claims that his ten-year mandatory minimum sentence was imposed in violation of *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000) because drug quantity and type were not submitted to the jury. Because Camara failed to raise this claim with the district court, we review only for plain error. *See, e.g., United States v. Buckland,* 289 F.3d 558, 563 (9th Cir.) (en banc), *cert. denied,* —— U.S. ——, 122 S.Ct. 2314, 152 L.Ed.2d 1067 (2002).

Even if the rule announced in *Apprendi* extends to mandatory minimum sentences,

*see Harris v. United States,* —— U.S. ——, 122 S.Ct. 663, 151 L.Ed.2d 578 (2001) (granting certiorari on this question), any error did not affect Camara's substantial rights. First, Camara stipulated to amounts that far exceed the statutory minimum quantity. *See, e.g., Buckland,* 289 F.3d at 569. Second, we recently held that drug type need not be submitted to the jury. *See United States v. Carranza,* 289 F.3d 634, 643–44 (9th Cir.2002). Thus, Camara's *Apprendi* argument is without merit.

AFFIRMED.

BERZON, Circuit Judge, dissenting.

BERZON, Circuit Judge.

Although I agree with the majority regarding every other issue, I would reverse because I do not think there was substantial evidence to prove Camara's intent to distribute methamphetamine or his intent to aid and abet the transactions. Viewing the evidence in the light most favorable to the prosecution, I would conclude that no rational trier of fact could have found the essential elements of possession with intent to distribute or distribution beyond a reasonable doubt. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

1. Conviction as a Principal. Although the testimony, taken as true, establishes Camara's knowledge that drug transactions were taking place, it does not establish his intent to deliver a prohibited drug to another. There was no evidence that Camara himself possessed the drugs during the July 14 transaction for which he was convicted. According to the testimony, before the transaction on July 16, Camara did hold the envelope containing the drugs for a moment and then hand it back to one of his co-defendants. Holding drugs and returning them to the person to whom they belong cannot, however,

amount to distribution or intent to distribute. Thus, there is insufficient evidence to uphold Camara's convictions on a direct liability theory.

2. Conviction Under an Aiding and Abetting Theory. "To be guilty of aiding and abetting another person, it is necessary that the defendant in some sort associate himself with the venture, that he participate in it as something that he wishes to bring about, that he seek by his action to make it succeed." *United States v. Vasquez–Chan,* 978 F.2d 546, 552–53 (9th Cir.1992). It is undisputed that Camara was present during the two drug transactions for which he was convicted. Furthermore, there was evidence from which the jury could infer beyond a reasonable doubt that he knew that prohibited drugs were being sold. But, "mere presence" or "hanging around" drug dealers is not sufficient evidence of guilt. *United States v. Herrera–Gonzalez,* 263 F.3d 1092, 1095 (9th Cir.2001) ("It is not a crime to be acquainted with criminals or to be physically present when they are committing crimes.").

The testimony of Camara's three co-defendants, who pleaded guilty and testified for the prosecution, did not provide evidence from which a jury could infer Camara's intent to aid the drug transactions. Alexander Gines agreed that Camara had nothing to do with the drug dealings. He also explained that it was only supposed to be him and Robert Cajigal at the sales. Because Gines did not want Camara staying at Gines's house alone, the confederates gave Camara the choice of leaving Gines's house or coming along.

Byron Lopez, in contrast, did state that Camara was "involved" in the sale of drugs. But when asked about Camara's role, Lopez stated that he did not know

what that role was and that he had no relationship with Camara in the drug business. Cajigal also stated in general terms that Camara was "involved" in the sale of drugs but provided no details of that involvement. To the contrary, his more specific testimony was that Camara did nothing to participate in the drug transactions and played no part in getting to the sites of the transactions.

The prosecution's other evidence consisted of the testimony of the undercover agent who purchased the drugs during the two transactions at issue and a videotape of the drug sales. The videotape showed only that Camara was seated in the passenger seat of a car involved in the transactions. Agent Haleck testified that besides being physically present, all Camara did was roll down the car window at Haleck's request.

In sum, the evidence concerning Camara's involvement was that he was a passenger in the car during the drug transactions; overheard and witnessed preparations for the drug sale; agreed to let Cajigal use a car that Camara had rented; held the drugs for a minute or two while a co-defendant went to the bathroom in his house; in response to Cajigal's inquiry, pointed out Gines in the parking lot before the sale; made an ambiguous statement before the July 16 transaction that suggested impatience to get the transaction over with; and agreed with his co-defendant's statement that the buyer (who was in fact an undercover officer) looked suspicious. That evidence, taken as a whole, is not sufficient to establish his intent to aid the drug transactions. *See United States v. Ramos–Rascon*, 8 F.3d 704, 707–11 (9th Cir.1993); *United States v. Bautista–Avila*, 6 F.3d 1360, 1362–64 (9th Cir.1993); *United States v. Lopez*, 625 F.2d 889, 895–900 (9th Cir.1980). "[M]ere presence at the scene of the crime or mere knowledge that a crime is being committed is not sufficient to establish that the defendant committed the crime ... unless you find that the defendant was a participant and not merely a knowing spectator." *United States v. Angwin*, 271 F.3d 786, 806 (9th Cir.2001) (quoting 9th Cir.Crim. Jury Instr. 6.9). And although circumstantial evidence can be used to prove any fact, "mere suspicion or speculation does not rise to the level of sufficient evidence." *United States v. Dinkane*, 17 F.3d 1192, 1196 (9th Cir.1994).

The government also contends that Camara served as "an extra set of eyes" during the transactions, establishing his intent to aid the transactions. None of the witnesses provided any evidence that Camara was instructed to act as a lookout or that he intended to fulfill that role. Without evidence of an intent to aid the transaction, simply being an extra set of eyes cannot be enough to convict someone of aiding and abetting. If it were, then mere presence would always be sufficient to establish guilt, contrary to established law. *See Herrera–Gonzalez*, 263 F.3d at 1095; *United States v. Ramirez*, 176 F.3d 1179, 1181 (9th Cir.1999) ("[Defendant's] presence in the vehicle is explained entirely by his friendship with [his co-defendant]...."); *United States v. Penagos*, 823 F.2d 346, 349–50 (9th Cir.1987) (despite presence at the time of cocaine delivery and alleged actions as a lookout, "the government did not produce evidence that would allow a rational jury to conclude beyond a reasonable doubt that defendant acted as a lookout or committed any act in furtherance of the conspiracy").

In sum, Camara's behavior was perfectly consistent with that of an innocent person friendly with the drug dealers, aware of their illegal activities, but having no stake or interest in drug transactions or intention to make them succeed. *See id.* at 349.

Because the government has failed to establish sufficient evidence to prove Camara's intent to aid the drug transactions, I would reverse Camara's convictions for possession with intent to distribute and distribution of methamphetamine.