**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

MAR 7 2025

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | No. 23-1993 |
| Plaintiff-Appellee, | D.C. No. 2:07-cr-01172-DDP-32 |
| v. | |
| JAVIER PEREZ, | MEMORANDUM[*] |
| Defendant-Appellant. | |

On Appeal from the United States District Court
for the Central District of California
Hon. Dean D. Pregerson, Presiding

Argued and Submitted January 17, 2025
Pasadena, California

Before: BERZON, TALLMAN, and R. NELSON, Circuit Judges.
Dissent by Judge BERZON.

This case returns to us following a prior remand. *See United States v. Perez*, 962 F.3d 420, 446–47, 455 (9th Cir. 2020). Defendant-Appellant Javier Perez appeals his life sentence for RICO conspiracy, VICAR murder conspiracy, VICAR kidnapping conspiracy, and conspiracy to kidnap convictions based on a gang-

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

related kidnapping and attempted murder of a hitman who had previously murdered an innocent 21-day old bystander to another attempted murder.

The district court based the sentence primarily on the Probation Office's Sentencing Guidelines calculation that yields a recommended sentence of life imprisonment. The court alternatively adopted the Government's three additional guidelines calculations that each yield a recommended sentence ranging from 360 months to life imprisonment. All four calculations begin with kidnapping or murder conspiracy as the base level offense, which Perez agrees is correct. Perez also agrees that the Government's first and third alternative calculations correctly add other offense levels allowed under the base offense guidelines. The only issue Perez argues on appeal regarding the first and third alternative calculations is the inclusion of a four-level enhancement because his victim, Giovanni Macedo, "sustained permanent or life-threatening bodily injury." U.S. Sent'g Guidelines Manual § 2A2.1(b)(1)(A) (U.S. Sent'g Comm'n 2011). Perez's appeal thus turns on whether the district court erred in applying this enhancement. We find no such error.

We have jurisdiction to review the district court's sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a). We review the court's application of facts to the guidelines "deferentially for abuse of discretion." *United States v. Gasca-Ruiz*, 852 F.3d 1167, 1171, 1174 (9th Cir. 2017) (en banc). "A district court abuses its discretion when it applies the wrong legal standard or when its findings of fact or its

application of law to fact are illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Chichande*, 113 F.4th 913, 919–20 (9th Cir. 2024) (internal quotation marks and citation omitted).

Application Note 1(J) to U.S.S.G. § 1B1.1 defines "life-threatening" in relevant part as "involving a substantial risk of death" and says nothing about the need for a threshold medical diagnosis or intervention to support that conclusion. *See also United States v. Hinton*, 31 F.3d 817, 825–26 (9th Cir. 1994) (dismissing defense argument that "no medical testimony was presented at trial, or at the sentencing hearing, which showed the victim faced a substantial risk of death because of the stab wounds" because the argument "fails to consider that the enhancement was premised not on infliction of a 'permanent' injury . . . but on that section's alternative, 'life-threatening' prong").

Here, the district court made several factual findings by a preponderance of the evidence supporting its conclusion that Macedo sustained injury that "involv[ed] a substantial risk of death." Relying on the evidence adduced in a two-month jury trial, the court found that Perez, who was hired to kill Macedo, strangled him with a rope to the point of a bloodied and scarred neck, causing Macedo to lose consciousness.[1] The court also found that, once Perez and his co-conspirators

---

[1] The dissent makes the perplexing statement that "it is not self-evident that Macedo faced a 'substantial risk of death' from, or evidenced by, his unconsciousness.

believed Macedo dead, they threw his body off of a cliff in remote Mexico and fled the scene.

Perez does not dispute those findings, which are supported by Macedo's own testimony, the testimony of the co-conspirator who drove them to the crime scene, photographs presented at trial of Macedo's neck taken approximately six weeks after strangulation, and the presence of his scars at trial nearly four and a half years later. Nothing compels us to conclude that these findings "are illogical, implausible, or without support in inferences that may be drawn from the record." *Chichande*, 113 F.4th at 919–20 (internal quotation marks and citation omitted); *see Hinton*, 31 F.3d at 820, 826 (agreeing that "[a]mple evidence of a life-threatening injury supported the sentencing court's factual findings on this issue," including, like here, witness testimony establishing the victim's injuries and maltreatment). Although the district court misstated a co-conspirator's testimony in finding that Macedo's heart had temporarily stopped at the time he was thrown off the cliff, that single erroneous factual finding was harmless. The undisputed facts cited above are enough to support the district court's enhancement.

---

Although it may be that some feature of Macedo's unconsciousness made it deadly, the record is devoid of evidence so demonstrating . . . ." We disagree. The record shows that two hired assassins strangled Macedo with a garrote while one yelled, "Die Motherfucker, die!" The assassins only ceased after one declared that Macedo was no longer breathing and that Macedo "couldn't be alive because he [] had just snapped his neck." These "feature[s]" of Macedo's unconsciousness presented a "substantial risk of death."

Perez argues that the district court erred in adding the enhancement because "it is not the actions of the defendants that can be life-threatening in order for the enhancement to apply; it is the injury." But we have previously held that such "acts" are not just "circumstances in which the beatings took place"; they may constitute "maltreatment to a life-threatening degree" "whether or not the perpetrator also has inflicted other injuries." *United States v. Morgan*, 238 F.3d 1180, 1188 (9th Cir. 2001); *accord Hinton*, 31 F.3d at 820, 826. The facts and holding of *Morgan* are instructive. There, the victim was carjacked and kidnapped by two defendants at a truck stop. *Id.* at 1184. Defendants restrained the victim, locked him in the trunk in below-freezing temperatures, then later repeatedly stopped and beat him with a metal pipe, made several shallow cuts across his throat, and stabbed him in the shoulder. *Id.* Believing him dead, defendants drove to a remote location, removed the victim from the trunk, threw him down a hill, then drove away. *Id.* The victim, like Macedo, miraculously survived, climbed back up to the highway, and hailed a ride to safety. *Id.* He surprisingly required minimal medical care relative to his ordeal and was discharged from the hospital after only three days. *Id.*

At sentencing, the judge in *Morgan* added the lower enhancement of "serious bodily injury" rather than the Government's requested "permanent or life-threatening bodily injury." *Id.* at 1185. The district court reasoned, as Perez argues here, that the victim's "injuries themselves were not life-threatening, but that [the

victim's] situation was life-threatening." *Id.* at 1188. We rejected that reasoning and reversed and remanded, disagreeing that "[b]ecause the court found that [the victim's] 'circumstances' were more dire than his injuries, . . . it could not grant the enhancement for 'life-threatening injury.'" *Id.* at 1188. We ordered the district court to reconsider adding the enhancement based not only on "the beatings" but also the "deprivations themselves" to decide whether those constituted "maltreatment to a life-threatening degree . . . irrespective of the other injuries" the victim sustained. *Id.* (internal quotation marks omitted). On remand, the district court then found that the victim had indeed sustained "life-threatening bodily injury," which we affirmed. *United States v. Morgan*, 33 F. App'x 907, 907 (9th Cir. 2002).

In light of our rulings in *Morgan* and *Hinton*, the district court did not abuse its discretion in concluding that Macedo's injuries (asphyxiation to the point of unconsciousness, evidenced by a bloodied, scarred neck), alongside Perez's maltreatment of the victim (throwing an unconscious Macedo off of a cliff in remote Mexico and leaving him for dead) had a "substantial risk of death" and amounted to "life-threatening bodily injury."[2] *See id.*; *Hinton*, 31 F.3d at 820, 826 ("Viewed in

---

[2] This is a straightforward conclusion supported by the language of the guidelines and our case law. The dissent goes to great lengths to complicate it, reasoning that "[i]f the victim is not hurt because the shooter misses him, he has not sustained a life-threatening injury, any more than a shooter who misses an intended victim is guilty of murder rather than attempted murder." But that is not what happened here. Macedo did not dodge a bullet unscathed. He was strangled to the point of near

conjunction with [defendant's] contemporaneous threat to kill the victim, the forceful blows, the profuse blood loss and the subsequent denial of access to medical treatment endangered the victim's life and thus constituted a 'life-threatening bodily injury.'").

We hold that, applying a common sense analysis to the facts presented here, the sentencing judge properly found that there was a "substantial risk of death" to warrant the four-level "life-threatening bodily injury" enhancement. We affirm the district court's life sentence based on the Government's first and third alternative calculations that each yield a guidelines range of 360 months to life imprisonment. In light of our decision, we need not reach Perez's remaining issues challenging the Probation Office's guidelines calculation and the Government's second alternative guidelines calculation.

**AFFIRMED.**

---

death. Then, the assassins threw Macedo's unconscious body off of a cliff in remote Mexico, all but guaranteeing he had no access to any lifesaving measures. Macedo is the opposite of an eggshell plaintiff—he survived what one would expect to be an unsurvivable assault. But the fact that he survived does not mean that his injury and maltreatment presented anything less than a "substantial risk of death." *See Morgan*, 33 F. App'x at 907; *Hinton*, 31 F.3d at 820, 826.

BERZON, J., dissenting:

The majority misconstrues the meaning of the Sentencing Guideline it addresses.[1] Because I disagree with the application of the life-threatening bodily injury enhancement, I dissent.

The enhancement at issue applies "[i]f . . . the victim sustained permanent or life-threatening bodily injury." U.S.S.G. § 2A2.1(b)(1). The Guidelines commentary defines a "life-threatening bodily injury" as an "injury involving a substantial risk of death." U.S.S.G. § 1B1.1 cmt. 1(K). As the Guideline makes clear, the enhancement applies only if the victim *actually sustained* an injury that was life-threatening.

The district court concluded that "strangling someone to the point where they lose a heartbeat and throwing them off a cliff in Mexico unconscious is . . . an injury contemplated by the definition of life-threatening." The majority approves the district court's conclusion, reasoning that both Macedo's strangulation and his fall caused him to sustain life threatening injuries.

1. In concluding that the strangulation resulted in a life-threatening injury, the district court relied on an erroneous factual finding, that Macedo "was found to have no heartbeat." On appeal the government repeated a version of this assertion,

---

[1] Because the majority does not reach Perez's alternative arguments regarding what offenses may be cross-referenced under U.S.S.G. § 2A4.1(b)(7), I also do not address them.

1

maintaining that Macedo had only "a faint pulse." There is no evidence in the record indicating that Macedo did not have a heartbeat or that his pulse was faint. The only evidence on this issue is Perez's co-conspirator's testimony that, when she checked while he was unconscious, Macedo had a pulse.

"A district court may abuse its discretion . . . if it rests its decision on a clearly erroneous finding of material fact." *United States v. Rodriguez*, 921 F.3d 1149, 1156 (9th Cir. 2019) (citation omitted). The district court's finding that Macedo had no heartbeat is clearly erroneous, so its application of the life-threatening injury enhancement on this basis was an abuse of discretion.

Macedo also sustained ligature marks around his neck. Although the majority discusses this injury, there is no serious argument that Macedo faced a substantial risk of death from his neck abrasions, nor does the government make one.

The majority acknowledges the district court's erroneous factual finding regarding Macedo's pulse but contends that it is harmless, because Macedo sustained another injury resulting from the strangulation: unconsciousness. But it is not self-evident that Macedo faced "a substantial risk of death" from, or evidenced by, his unconsciousness. Although it may be that some feature of Macedo's unconsciousness made it deadly, the record is devoid of evidence so demonstrating, and so does not establish that Macedo faced "a substantial risk of death" because of, or evidenced by, his unconsciousness. U.S.S.G. § 1B1.1 cmt. 1(K).

*United States v. Hinton* provides an instructive example of the type of evidence that can prove an injury was life threatening. 31 F.3d 817 (9th Cir. 1994). There we affirmed the finding that the victim's "profuse blood loss" was life threatening. 31 F.3d 817, 826 (9th Cir. 1994). That case involved "[n]umerous witnesses" who "testified to the victim's considerable blood loss." *Id.* In particular, the ambulance medical technician who treated the victim testified that the victim had gone into shock and required immediate intervention to treat her bleeding. *Id.*

There is no comparable evidence here. Although there is testimony indicating that Macedo was unconscious, there is no evidence of the period of time he was out, and there is none that speaks to his need for immediate treatment. And unlike both cases where we have previously concluded there was or may have been a life-threatening injury under the Guideline, Macedo did not seek medical care after the incident. *See id.* at 820; *see also United States v. Morgan*, 238 F.3d 1180, 1184 (9th Cir. 2001). Although pursuing medical care is not an explicit requirement imposed by the Guideline, the fact that Macedo ultimately deemed no medical care necessary is probative of the dangerousness, or lack thereof, of his injury.

At base, there must be *some* evidence that the victim's injuries were so severe that they placed him in mortal peril. Here, there is no evidence demonstrating that Macedo's unconsciousness presented or was indicative of a substantial risk of death.

2. Next the majority contends that the act of throwing Macedo over an embankment on the side of the road merits the enhancement. The majority does not identify any injury—much less one that was life threatening—caused by Macedo's fall. The record indicates that Macedo was—although one might well have predicted otherwise—uninjured by the fall.

Instead, the majority relies on a provision in the Guidelines commentary stating that "[i]n the case of a kidnapping, for example, maltreatment to a life-threatening degree (*e.g.*, by denial of food or medical care) would constitute life-threatening bodily injury." U.S.S.G. § 1B1.1. cmt. 1(K). In accordance with this provision, we have held that "during a kidnapping, deprivation of the essentials of life or similar 'maltreatment' may by itself be a 'life-threatening bodily injury.'" *United States v. Morgan*, 238 F.3d 1180, 1188 (9th Cir. 2001). In *Morgan*, we remanded for the district court to consider whether the victim's lack of "fresh air, food, water, medical care, and heat" was sufficiently life threatening to qualify for the enhancement. *Id.* at 1188-89. The logic of such a rule is that, although not caused by physical violence, conditions such as starvation, dehydration, hypothermia, or heat stroke, caused by lack of food, water, or appropriate temperature conditions, can be considered "injuries" for the purposes of the enhancement, and can trigger the enhancement—but only *if* the condition becomes life-threatening.

4

Seeking to justify the application of the life-threatening bodily injury enhancement even though Macedo was not injured at all by the fall, the majority maintains that throwing Macedo over an embankment is analogous to denying kidnapping victims food or water or exposing them to extreme temperatures, because it is also "maltreatment." This reading is unsupported by *Morgan*, which addressed maltreatment of a specific type—the "deprivation of the essentials of life"—and then remanded to determine whether the maltreatment was life-threatening. *Morgan*, 238 F.3d at 1188. With that sort of maltreatment, any internal impact on life-sustaining bodily functions is gradual, and it makes sense to ask retrospectively whether at some point the harm caused by the maltreatment became life-threatening. In contrast, where the "maltreatment" takes the form of placing an individual in danger of sustaining a physical injury—shooting at someone, for example, or, as here, throwing someone over an embankment—either an injury occurred or it did not. If, as here, *no* injury occurred, there could not have been a life-threatening injury; if an injury did occur, *then* the second question arises, whether it was life-threatening.

The majority's reading disregards the two-step analysis *Morgan* presupposes and thereby conflicts with the language of the Guideline itself. Once again, the Guideline is clear that the enhancement applies only if the victim actually "*sustained*" a "life-threatening bodily injury." U.S.S.G. § 2A2.1(b)(1)(A) (emphasis added). Expanding the commentary concerning "maltreatment" to encompass acts

beyond the gradual internal injuries that can be caused by the deprivation of life essentials means that virtually every act of violence would warrant the enhancement, regardless of whether the victim sustained *any* injury.

That exact situation is present here. It is uncontroverted that Macedo was entirely uninjured from his fall. Yet the majority would apply the life-threatening bodily injury enhancement because throwing him off the cliff was maltreatment and *could* have caused him to sustain a life-threatening injury.[2] But the Guideline focuses on whether there *was* a life-threatening injury, not whether there could have been or whether the defendant believed there was one. Shooting at someone is surely maltreatment. If the victim is not hurt because the shooter misses him, he has not

---

[2] To be sure, Perez's statements during the incident show that there was a clear intent to kill Macedo, as well as an erroneous belief that he had succeeded in doing so. Contrary to the majority's reasoning, however, being in a situation where there is an intent to kill is not the same as "sustain[ing]" a "life-threatening bodily injury." U.S.S.G. § 2A2.1(b)(1)(A). Because "attempted murders are, by definition, life-threatening, to consider . . . the intended result of [the defendant's] actions could subject every attempted murder to the four-level enhancement, regardless of the injuries actually suffered by the victim." *United States v. Spinelli*, 352 F.3d 48, 57 (2d Cir. 2003). "But the Guidelines clearly contemplate various levels of enhancement for attempted murder-or indeed no enhancement at all" depending on the actual severity of the victim's injuries. *Id.* The majority's application of the enhancement based on indications that Perez intended Macedo's death and erroneously believed that he had fatally injured him is inconsistent with the structure of the Guideline, which indicates that the enhancement should not apply in every instance of attempted murder, and the text of the enhancement. The text, once again, requires the victim to have *actually* sustained a life-threatening injury.

sustained a life-threatening injury, any more than a shooter who misses an intended victim is guilty of murder rather than attempted murder.

Because there is insufficient evidence that Macedo sustained an injury that posed a substantial risk of death, I would hold that the district court abused its discretion in applying the life-threatening bodily injury enhancement. I therefore respectfully dissent.