**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Claudio SALCIDO–CORRALES, Defendant–Appellant.**

**No. 00–30116.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Jan. 11, 2001

Filed May 22, 2001

Hannah Horsley, Office of the United States Attorney, Seattle, Washington, for the appellee.

Jo Ann Oliver, Office of the Federal Public Defender, Tacoma, Washington, for the appellant.

Before: McKEOWN, W. FLETCHER, and RAWLINSON, Circuit Judges.

WILLIAM A. FLETCHER, Circuit Judge:

At sentencing following a guilty plea in a drug case, the district court increased Claudio Salcido–Corrales' base offense level by two levels. The district court justified its decision on two independent grounds: (1) an adjustment based on the defendant's role as an organizer, leader, manager, or supervisor; and (2) an upward departure based on the defendant's involvement of his son in his crimes. We agree with the district court on both grounds. We hold that there was sufficient evidence to support the role-based adjustment, and that the upward departure was not an abuse of discretion. We therefore affirm.

I

Claudio Salcido–Corrales pled guilty to one count of distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(C) and 18 U.S.C. § 2; and one count of distributing cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B) and 18 U.S.C. § 2. The co-defendant in the case was Salcido–Corrales' son, Carlos Ivan Salcido–Ortega.

Pursuant to the guilty plea, the parties agreed to a statement of facts, which reads, in pertinent part, as follows:

a. On July 13, 1999, CLAUDIO SALCIDO–CORRALES met with an undercover police officer in Federal Way, Washington and negotiated the sale of a quarter kilogram of cocaine for $4,500.00. On July 14, 1999, co-defendant Carlos Ivan Salcido–Ortega delivered the quarter kilogram to the undercover officer at the direction of SALCIDO–CORRALES, and took $4,500.00 in official government funds from the officer in exchange for the cocaine. The transaction occurred inside the officer's undercover apartment in Federal Way, Washington. Salcido–Ortega is SALCIDO–CORRALES'S son

. . . .

b. Between July 14, 1999 and August 26, 1999, SALCIDO–CORRALES and the undercover officer negotiated with SALCIDO–CORRALES and Salcido–Ortega to purchase one (1) kilogram of cocaine. On August 26, 1999, Salcido–Ortega delivered the kilogram to the undercover officer at his undercover apartment in Federal Way, Washington, and took $18,500.00 in official government funds from the officer in exchange for the cocaine.

According to the Presentence Report, Salcido–Corrales' conviction stemmed from an investigation by an undercover officer. The undercover officer leased an apartment in an apartment complex where drug activity had been observed. The officer then made contact with Salcido–Corrales, who stated that he knew sources of large amounts of drugs and that his son Ivan was involved in drug dealing. On July 13, 1999, the officer negotiated with Salcido–Corrales for a drug purchase. Salcido–Corrales introduced his son to the officer, stating that his son sold drugs and would be helping him with the deal, which was to take place on the following day. The next day, Salcido–Corrales told the officer that his son would deliver the drugs to the officer's apartment. When the son arrived, the officer asked him whether Salcido–Corrales had sent him, and the son said yes. The officer gave the son $4,500 in exchange for the drugs.

On July 20, 1999, Salcido–Corrales flagged down the officer outside the apartment complex and suggested another deal. When they met three days later, Salcido–Corrales said that his source was in California picking up drugs. At this meeting Salcido–Corrales also said that he had sources capable of delivering multiple kilograms of cocaine. At a later meeting on August 3, 1999, Salcido–Corrales said that his source had not yet returned, but that one of his other sources was picking up drugs in Nevada. About three weeks later, Salcido–Corrales told the officer that he supplied the dealers in his apartment complex and that he controlled several of the apartments.

On August 25, 1999, the officer negotiated with Salcido–Corrales and his son to buy one kilogram of cocaine for $18,500 on the following day. The next day, Salcido–Corrales' son went to the officer's apartment and completed the deal.

After his arrest, Salcido–Corrales pleaded guilty and was sentenced. At sentencing, the district court adjusted Salcido–Corrales' offense level upward by two levels. The district court justified the decision on two grounds, believing either one sufficient to support the two-level increase:

[I]t is a normal human emotion for anyone viewing this to want to put an extra amount of blame on Mr. Salcido–Corrales for allowing his son to be a part of this criminal enterprise. And the universality of that reaction is an indication that it is a factor that the Court should

consider. It is something that takes it out of the heartland of other kinds of drug dealing that involve coconspirators or codefendants.

And whether one calls it two points under Section 3(b)(1.1), Subsection C for the defendant being organizer, leader, manager or supervisor, and I do believe there are facts present here in the Plea and in the reports to justify that as reported in the Government's Memorandum. Or in the alternative, if one simply says the fact that he directed his son and allowed his son to be exposed to this kind of danger and this kind of criminal sanction in that situation is a factor that is not in the guidelines, but takes it out of the heartland for two points.

The district judge then sentenced Salcido–Corrales to a term of imprisonment of sixty-four months.

## II

■ Section 3B1.1(c) of the Sentencing Guidelines increases a defendant's offense level by two levels "[i]f the defendant was an organizer, leader, manager, or supervisor" in criminal activity that involved fewer than five persons and that was not otherwise extensive. We review for clear error the district court's determination that a defendant qualifies for a role adjustment under the Guidelines. *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir.2000).

■ An adjustment is warranted if the evidence shows that the defendant acted in one of the four roles specified in the guideline. *United States v. Harper*, 33 F.3d 1143, 1150 (9th Cir.1994). "[T]o sustain a finding that a defendant in fact played one of the four specified roles, there must be evidence that the defendant 'exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out a crime.'" *Id.* at 1151

(quoting *United States v. Mares–Molina*, 913 F.2d 770, 773 (9th Cir.1990)). Under the second application note to § 3B1.1, "[t]o qualify for an adjustment under this section, the defendant must have been the organizer, leader, manager, or supervisor of *one or more* participants" (emphasis added). "A single incident of persons acting under a defendant's direction is sufficient evidence to support a two-level role enhancement." *Maldonado*, 215 F.3d at 1050.

The statement of facts contained in the plea agreement recites that Salcido–Corrales' son "delivered the quarter kilogram to the undercover officer *at the direction of* SALCIDO–CORRALES" (emphasis added). Viewed in the context of unchallenged facts available to the court in the Presentence Report, this episode qualifies as an exercise of supervisory authority over a person in the course of the commission of a crime. *See Maldonado*, 215 F.3d at 1051 ("[T]he district court may, without error, rely on evidence presented in the [Presentence Report] to find by a preponderance of the evidence that the facts underlying a sentence enhancement have been established."). Salcido–Corrales relies on *United States v. Avila*, 95 F.3d 887 (9th Cir.1996). In that case we held that Avila did not exercise any authority over others, but rather acted as a mere go-between. We noted that (1) there was no evidence that he "coordinated or oversaw the procurement or distribution of drugs"; (2) he did not negotiate the price of the drugs; and (3) he "lacked decision-making authority." *Id.* at 891. Unlike in *Avila*, all three of these elements are present in this case. Evidence in the record indicates that Salcido–Corrales coordinated the distribution of drugs that he received from out-of-state sources. He also initiated drug deals with the undercover officer and negotiated the terms of the deals and set their locations and times. Finally, he ex-

ercised authority over his son and others in the apartment complex in order to complete these deals.

█ Salcido–Corrales argues that the facts will also support the theory that Salcido–Corrales' son was the person exercising authority. This may or may not be so, but it does not establish the clear error required for reversal. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Duckett v. Godinez,* 109 F.3d 533, 535 (9th Cir.1997). We therefore conclude that the district judge's ruling that an adjustment was warranted under § 3B1.1(c) was not clearly erroneous.

### III

We also uphold the district court's alternate holding that the upward departure was warranted under § 5K2.0 of the Sentencing Guidelines. A departure from the Sentencing Guidelines can be made if, in the sentencing court's view,

> there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described. Circumstances that may warrant departure from the guideline range pursuant to this provision cannot, by their nature, be comprehensively listed and analyzed in advance.

U.S. Sentencing Guidelines Manual § 5K2.0 (2000) (quotation marks omitted). A district court's decision to depart from the Guidelines is reviewed for abuse of discretion. *Koon v. United States,* 518 U.S. 81, 99, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). Where a ground for departure is not proscribed by the Guidelines, "the sentencing court must determine whether the factor, as occurring in the particular circumstances, takes the case outside the heartland of the applicable Guideline." *Id.* at 109. "Whether a factor is a permissible ground for departure is a matter of law, although '[l]ittle turns on whether ... we label review of this particular question abuse of discretion or *de novo,* for an abuse of discretion standard does not mean a mistake of law is beyond appellate correction.'" *United States v. Sanchez–Rodriguez,* 161 F.3d 556, 559 (9th Cir. 1998) (quoting *Koon,* 518 U.S. at 100, 116 S.Ct. 2035).

█ In this case, the district court believed that an upward departure was warranted because Salcido–Corrales involved his son in his crimes. Other circuits have affirmed upward departures based on defendants' involvement of their children or other relatives in the commission of crime. *See United States v. Ledesma,* 979 F.2d 816, 822 (11th Cir.1992) (departure upheld where the defendant facilitated her daughter's participation in a drug conspiracy); *United States v. Jagim,* 978 F.2d 1032, 1042 (8th Cir.1992) (departure upheld where defendant's nephew, while "perhaps not a 'vulnerable victim' ... nonetheless was dragged into the conspiracy by his uncle in part because of the familial relationship"); *United States v. Porter,* 924 F.2d 395, 399 (1st Cir.1991) (departure upheld where defendant urged his son to rob a bank). A parent occupies a position of trust with respect to a child and will have, in many cases, substantial influence over the child's decisions. We do not find it improper for a district court to find particularly blameworthy the fact that a parent has brought his child into a criminal enterprise, and to rely on that fact as a basis for an upward departure.

The evidence does not show that Salcido–Corrales coerced his son into the drug trade, but it does show that he facilitated his involvement. As discussed above, there was no clear error in the district

court's finding that Salcido–Corrales directed the participation of his son in his drug distribution activity. The son was an integral part of the two drug deals that were the foundation of the offenses to which Salcido–Corrales pleaded guilty. Although Salcido–Corrales' son was eighteen years old at the time of the offenses, we do not believe that this fact renders the departure improper. *See Ledesma,* 979 F.2d at 822 ("[E]ven though [defendant's daughter] recently had reached the age of majority, there is not clear error in the district judge's finding that her involvement in the drug trade was the result of her mother's influence.").

On the facts of this case, the district court did not abuse its discretion in finding that Salcido–Corrales' involvement of his son in his crimes took the case "out of the heartland" of the applicable guideline, thereby justifying an upward departure on that ground.

### IV

We conclude that the district court did not err in increasing Salcido–Corrales' offense level by two levels, based either on a finding that Salcido–Corrales played a role as an organizer, leader, manager, or supervisor, or on a finding that involving his son in his crimes merited an upward departure from the Guidelines.

AFFIRMED.