**UNITED STATES of America, Plaintiff—Appellee,**

v.

**Jose MEZA–AVILA, Defendant— Appellant.**

of this circuit except as may be provided by

**United States of America, Plaintiff—Appellee,**

v.

**Jose Juan Cienfuegos–Bernal, aka Alfonso Morales–Moran, Defendant—Appellant.**

**United States of America, Plaintiff—Appellee,**

v.

**Luis Ariel Cienfuegos–Bernal, aka Arnulfo Payan–Perez, Defendant—Appellant.**

Nos. 01–30178, 01–30289, 01–30294.
D.C. No. CR–00–176–11–RE.
D.C. No. CR–00–176–05–RE.
D.C. No. CR–00–176–07–RE.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 8, 2002.

Decided Aug. 2, 2002.

Ninth Circuit Rule 36–3.

Before FERGUSON, W. FLETCHER, Circuit Judges, and KING,* District Judge.

## MEMORANDUM **

### I. INTRODUCTION

In these related appeals, appellants contest the validity of their sentences. Appellant Jose Meza–Avila ("Meza–Avila") challenges the district court's calculation of his base offense level. Appellants Jose Juan Cienfuegos–Bernal, aka Alfonso Morales–Moran ("Jose Juan"), and Luis Ariel Cienfuegos–Bernal, aka Arnulfo Payan–Perez ("Luis Ariel"), appeal two-level upward role adjustments. We have jurisdiction over these timely appeals pursuant to 28 U.S.C. § 1291. We VACATE the sentences imposed on Meza–Avila and Jose Juan and REMAND for resentencing. We AFFIRM the sentence imposed on Luis Ariel.

### II. BACKGROUND [1]

Sometime in 1998, Portland, Oregon law enforcement agencies recognized a pattern among individuals arrested for drug-related crimes. Arrestees identified their city of origin as Tepic, Mexico. Many were smuggled into the United States by "coyotes." The individuals then worked as low-level distributors of heroin and cocaine and were given cars, temporary residences, pagers, cellular phones, and $200–300 per month.

In March 1999, FBI agents in cities across the country began "Operation Tarpit," an investigation into a Mexican drug ring based in Tepic. By January 2000, Portland agencies joined the investigation.

---

* The Honorable George H. King, United States District Judge for the Central District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as may be provided by Ninth Circuit Rule 36–3.

1. The following background is taken from the presentence reports ("PSRs").

Portland officers compiled data about the structure of the distribution network in their area, performed undercover "buys," learned about the activities and roles of dealers, and identified the participants most closely associated with the upper echelons of the conspiracy. During the investigation, agents made two $100 heroin purchases from Meza–Avila.

All three appellants were members of this drug distribution group operating out of the Portland area. Four low-level "runners," including Meza–Avila, occupied the bottom rung of the conspiracy. Above the runners were "mid-level" and "mid-to-high-level" dealers who controlled the residences from which drugs were distributed and oversaw the daily flow of drugs and money. Agents considered appellants Jose Juan and Luis Ariel "peers" and "mid-to-high-level" dealers responsible for managing at least two "mid-level" dealers.

In June 2000, Portland agents executed a series of search warrants, resulting in appellants' arrests. On June 15, Meza–Avila was arrested at a Portland area home along with another "low-level runner." At that location, police recovered 0.3 grams of cocaine and $409.00 in cash. That same day, Jose Juan and Luis Ariel were arrested at a different home in the Portland area along with two mid-level managers. At that location, police unearthed approximately one kilogram of heroin buried in the backyard, found a loaded handgun in the kitchen, recovered $216.00 in cash, and detected trace amounts of cocaine.

Appellants were charged along with over thirty other co-defendants in a multi-count indictment. On December 14, 2000, Meza–Avila pled guilty to use of a telephone in causing or facilitating the distribution of a controlled substance in violation of 21 U.S.C. § 843(b). On March 27, 2001, Jose Juan and Luis Ariel pled guilty to posses-sion with intent to distribute cocaine in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

## III. ANALYSIS

### A. Jose Meza–Avila

■ Meza–Avila asserts that the district court applied the wrong legal standard when calculating the amount of drugs attributable to him for purposes of sentencing. We review interpretations of the sentencing guidelines *de novo*. *United States v. Jordan*, 256 F.3d 922, 926 (9th Cir.2001).

For a defendant to be accountable for an amount of drugs, the sentencing guidelines require direct involvement or, in cases of "jointly undertaken criminal activity," that the amount be reasonably foreseeable and within the scope of the defendant's agreement. U.S.S.G. § 1B1.3 app. note 2 (2000). The guidelines do not invariably hold defendants accountable for the total amount of drugs involved in a conspiracy. *United States v. Garcia–Sanchez*, 189 F.3d 1143, 1147 (9th Cir.1999); *United States v. Petty*, 982 F.2d 1374, 1376 (9th Cir.1993); U.S.S.G. § 1B1.3 app. note 2 (2000) ("[T]he scope of the criminal activity jointly undertaken by the defendant ... is not necessarily the same as the scope of the entire conspiracy ...."). A defendant's sentence cannot be based on the sales of other conspirators absent "some interest in, agreement regarding, or involvement with" those sales. *See Garcia–Sanchez*, 189 F.3d at 1148.

Here, the district court improperly attributed the total amount of drugs connected with the conspiracy to Meza–Avila merely because the evidence showed he was a co-conspirator. At the sentencing hearing, the district court stated "that there is certainly adequate reference in the presentence report that [Meza–Avila] was part of an organization, although, like

many and most people in an extensive and large conspiracy, had minor roles." In a Fact–Finding Order, the court "found there was enough information in the Presentence Report to connect [Meza–Avila] to the drug organization." These statements show that the district court held Meza–Avila accountable for the total amount of drugs due to his involvement in the conspiracy, not because the quantity of drugs was foreseeable and within the scope of his particular agreement with co-defendants.

As these are the only reasons stated by the district court for holding Meza–Avila accountable, we conclude that it applied the wrong legal standard and erred as a matter of law. Accordingly, we **VACATE** Meza–Avila's sentence and **REMAND** for resentencing on an open record.[2]

### B. Jose Juan Cienfuegos–Bernal

Jose Juan contends his two-level role adjustment rests upon unreliable and conclusory statements in the PSR. We review imposition of a role adjustment pursuant to § 3B1.1(c) "and ancillary or supportive findings of fact" for clear error. *See United States v. Jordan,* 291 F.3d 1091, 1097

[2]. Meza–Avila requests that we vacate and remand his sentence with instructions to fix the base offense level at 12 rather than 32. When a district court errs in sentencing, we generally remand "for resentencing on an open record—that is, without limitation on the evidence that the district court may consider." *United States v. Matthews,* 278 F.3d 880, 885 (9th Cir.2002). Because the district court's error stemmed from a misinterpretation of the sentencing guidelines, it has not yet considered the sufficiency of the evidence in the PSR with respect to whether some or all of the drug transactions may properly be attributed to appellant. Though Meza–Avila requests that we determine the issue on appeal, this is a matter that should be reserved for the district court's consideration in the first instance. We find no reason to depart from our practice of remanding on an open record.

(9th Cir.2002); *United States v. Salcido–Corrales,* 249 F.3d 1151, 1154 (9th Cir. 2001) (*citing United States v. Maldonado,* 215 F.3d 1046, 1050 (9th Cir.2000)). The district court's determination about a PSR's reliability is reviewed for abuse of discretion. *United States v. Berry,* 258 F.3d 971, 976 (9th Cir.2001); *United States v. Marin–Cuevas,* 147 F.3d 889, 895 (9th Cir.1998).

### 1. Section 3B1.1(c) role-adjustment

U.S.S.G. § 3B1.1(c) establishes when an "aggravating role" warrants an upward adjustment. *Id.*[3] For a two-level role adjustment, the government must show by a preponderance of the evidence that the defendant either "exercised some control over others involved in the commission of the offense [or was] responsible for organizing others for the purpose of carrying out a crime." *Salcido–Corrales,* 249 F.3d at 1154 (internal quotations omitted) (alterations in original) (*quoting United States v. Harper,* 33 F.3d 1143, 1151 (9th Cir.1994)); *United States v. Syrax,* 235 F.3d 422, 427 (9th Cir.2000). The enhancement applies if the government proves one incident where the defendant exercised authority over or directed the

[3]. (a) If the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive, increase by 4 levels.

(b) If the defendant was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants or was otherwise extensive, increase by 3 levels.

(c) If the defendant was an organizer, leader, manager, or supervisor in any criminal activity other than described in (a) or (b), increase by 2 levels.

U.S.S.G. § 3B1.1(c) (2001). Section 3B1.1 remains unchanged from the time appellants committed the offenses.

actions of even one participant. *United States v. Morgan*, 238 F.3d 1180, 1186–87 (9th Cir.2001); *Salcido–Corrales*, 249 F.3d at 1154; *United States v. Maldonado*, 215 F.3d 1046, 1050 (9th Cir.2000). Therefore, a defendant who "organizes others in the commission of the criminal activity" may receive a role enhancement "even though he does not retain a supervisory role over the other participants." *United States v. Montano*, 250 F.3d 709, 716 (9th Cir.2001) (*quoting United States v. Varela*, 993 F.2d 686, 691–92 (9th Cir.1993)).

### 2. Use of a PSR

In lieu of specific findings of fact, the district court may rely upon a PSR to support a § 3B1.1(c) role enhancement by a preponderance of the evidence. *United States v. Jordan*, 291 F.3d 1091, 1098 n. 9 (9th Cir.2002); *Maldonado*, 215 F.3d at 1051. However, the PSR's statements must first have "some minimal indicia of reliability" supporting their probable accuracy. *See United States v. Berry*, 258 F.3d 971, 976 (9th Cir.2001); *see also United States v. Buckland*, 289 F.3d 558, 569 (9th Cir.2002) (en banc). Reliability depends on several factors, such as whether the source (1) had any reason to prevaricate, *see United States v. Marin–Cuevas*, 147 F.3d 889, 895 (9th Cir.1998), (2) possessed first hand knowledge of the events, *see United States v. Garcia–Sanchez*, 189 F.3d 1143, 1149 (9th Cir.1999), or (3) was subject to cross-examination, *see id.* In addition, we look for other evidence to corroborate the challenged statements. *See Jordan*, 291 F.3d at 1098 n. 9; *United States v. Petty*, 982 F.2d 1365, 1367 (9th Cir.1993).

For example, we found unreliable a vengeful ex-wife's double hearsay statement that relayed an alleged statement by a young child. *United States v. Williams*, 41 F.3d 496, 499–501 (9th Cir.1994). Nei-

ther the ex-wife's nor the child's statements were subject to cross-examination, and the district court did not know the conditions under which the statements were made. *Id.* Likewise, in a drug conspiracy case, an agent's estimation of the drugs attributable to the defendant was unreliable because he lacked first hand knowledge about the operation of the conspiracy, never explained the basis for his estimates, did not identify his hearsay sources, failed to produce contemporaneous reports, and was never subject to cross-examination. *Garcia–Sanchez*, 189 F.3d at 1149.

District courts also may not rely upon conclusory assertions in a PSR. An assertion is conclusory if it simply proffers a conclusion without providing specific factual support, *see United States v. Harper*, 33 F.3d 1143, 1151 (9th Cir.1994), *United States v. Gamez–Orduno*, 235 F.3d 453, 464 (9th Cir.2000), or because it does not identify the source of its information. *Jordan*, 291 F.3d at 1098 n. 9.

In *Harper*, the PSR stated that "Harper, being a former employee of both Bank of America and Pedcom, organized this scheme [to commit bank robbery]. Information obtained during the FBI investigation indicated that she was instrumental in planning and organizing the robbery." 33 F.3d at 1151. We concluded there was insufficient grounds to impose a two-level role adjustment because there was no reference "to any specific facts that indicated that Harper exercised control over or organized others in committing this crime." *Id.*

The PSR in *Jordan* contained greater detail, but failed to provide any "basis for [its] assertions, such as hearsay statements from other persons even outside the trial record ...." 291 F.3d at 1098 n. 9. The PSR stated that the defendant

appears to have maintained control over the residence where the lab was found. He procured and maintained the laboratory equipment. He recruited his nephew ... to serve as a look-out at the lab site .... He instructed John Rowuin to contact one of the witnesses in this case to obtain information about the investigation thereby suggesting he exercised some influence over Rowuin.

*Id.*

The district court abused its discretion by imposing a role adjustment without requiring some support for these statements. *Id.* A PSR should identify some meaningful factual basis upon which the district court can rest its own findings and conclusions.

### 3. Jose Juan's PSR

■ Jose Juan's PSR stated that, according to agents, the bottom of the distribution ring was occupied by four low-level runners. Two mid-level managers supervised the residences and the daily flow of drugs and money.

Above those two were [appellant Jose Juan] and [his brother] .... [Jose Juan] spent the majority of his time in Mexico during this investigation, but came to Portland from Mexico, just before the search warrant [was executed on June 15, 2000].

. . . .

The case agent categorized [his] status as a 'mid-to-high level dealer' in this drug distribution network, who managed the daily flow of drugs and money .... According to the case agent, [Jose Juan] and [his brother] were peers. They were in control of the heroin seized from [his brother's] residence on June 15, 2000, and supervised its distribution by [the mid-level managers], who in turn supervised the drug activities of low-level distributors.

These statements are conclusory and unreliable. While the PSR refers to agents or case agent as the source of its information, it fails to indicate how and from whom the agents obtained such information. Nor does the PSR identify other corroborating evidence in support thereof. Without any apparent evidentiary foundation for these statements, we cannot begin to assess their probable accuracy.

As in *Jordan* where the PSR listed facts without any basis "such as hearsay statements ... even outside the trial record[,]" we do not know the basis for the agents' general description of Jose Juan as a "mid-to-high-level manager," who "supervised [drug] distribution by" other mid-level managers. We cannot fairly characterize statements by the "case agent" or "agents" as non-conclusory because we do not know whether the agents or some unknown declarant ever possessed personal knowledge of the relevant events.

Moreover, similar to *Harper*, the PSR provides little specific factual information to support the conclusion that Jose Juan "supervised" or "managed" other co-defendants. The PSR simply asserts that he was "above" two mid-level managers and "supervised [drug] distribution ...." The PSR does not explain what aspects of the "daily flow of drugs and money" he allegedly controlled or how he exercised authority over any member of the conspiracy. The PSR never identifies the specific facts the agents relied upon when reaching their conclusions about appellant's status and role in the conspiracy.

We recognize, of course, that information need not be admissible under the rules of evidence to be relied upon at sentencing. *See* U.S.S.G. § 6A1.3(a). Moreover, we recognize that district courts may rely upon hearsay at sentencing. *See, e.g., United States v. Berry,* 258 F.3d 971,

976 (9th Cir.2001); *United States v. Ponce*, 51 F.3d 820, 828 (9th Cir.1995). Here, the defect is not that the statements in the PSR are hearsay, but rather the lack of foundation as to how the probation officer and/or the case agents came to know the matters asserted.

We conclude the district court abused its discretion by adopting unreliable and conclusory statements in the PSR. We therefore **VACATE** Jose Juan's sentence and **REMAND** for resentencing on an open record. In light of our conclusion, we need not reach the other issues raised by Jose Juan on this appeal.

### C. Luis Ariel Cienfuegos–Bernal

█ Luis Ariel challenges his PSR as unreliabile and conclusory. According to the PSR, Luis Ariel admitted during an FBI interview "that he ... paid a 'coyote' $2,000 'all the time' to smuggle young men across the U.S. Mexico border. Those men then work[ed] for [him] distributing drugs once they arrive[d] in Portland."

Luis Ariel contends the "coyote" statement is unreliable because of the ease with which it could have been fabricated. Although he concedes it is an admission, he argues that we should treat such admissions as uncorroborated hearsay statements that cannot be considered at sentencing. *See United States v. Ponce*, 51 F.3d 820, 828 (9th Cir.1995) ("While hear-

say statements may be considered at sentencing, due process requires that such statements be corroborated by extrinsic evidence."). Yet as Luis Ariel recognizes, the PSR refers to an admission, not a hearsay statement. Unlike hearsay statements by others, which may be difficult to challenge or rebut, this portion of the PSR recites his own statements, which he could have readily challenged.[4] Admissions by criminal defendants contain "some minimal indicia of reliability," and Luis Ariel's statements would have been admissible had he proceeded to trial. In addition, the PSR drew the admissions from "an FBI report of an interview ... [conducted] shortly after his arrest." The FBI report is a contemporaneous record of his statements. *Cf. United States v. Marin–Cuevas*, 147 F.3d 889, 895 (9th Cir.1998) (noting that "an investigative report prepared by Secret Service agents is admissible at sentencing").

Luis Ariel next claims this admission "does not allege that he exercised control over these individuals or that he was responsible for organizing them to carry out the crime." We disagree. From this admission, the district court could find by a preponderance of the evidence that he supervised the young men "in the commission of the criminal activity." After all, he was their self-proclaimed boss.[5]

---

4. Though not raised on appeal, and apparently never argued before the district court, defense counsel wrote a letter to the probation officer challenging one aspect of this admission: "[Luis Ariel] ... admits to having, on one occasion, given $1,000 to a 'coyote' as he was instructed to do." However, he never contested the statement that smuggled aliens worked for him distributing drugs.

5. The PSR also states that Luis Ariel "admitted to managing a 'cell' of drug runners in the Portland area." Liberally construed, Luis Ariel contends that this is a conclusion lacking adequate factual support because the PSR

does not identify the specific statements he purportedly made during the interview. Even if true, it does not change our conclusion because his "coyote" statement is itself sufficient to support the district court's finding. Moreover, Luis Ariel argued before the district court that "his job [was] to instruct people where to go and who to meet over the phone." This level of participation appears sufficient for a two-level role adjustment as a manager or supervisor of other criminal participants. *Cf. United States v. Avila*, 95 F.3d 887, 890–91 (9th Cir.1996) (reversing four-level role adjustment when evidence only

In light of appellant's admissions, his citation to *United States v. Graham*, 162 F.3d 1180 (D.C.Cir.1998), is misplaced. The government in *Graham* relied solely upon the fact that the defendant was above the lowest rung of the drug distribution chain. *Id.* at 1184–85. Of course, a defendant's "job title" within an organization does not prove authority or control over others. *Id.* at 1184. Here, Luis Ariel's PSR does not simply identify his nominative status in the Portland conspiracy. It includes admissions about his authority with respect to at least some co-defendants.

Furthermore, the defendant in *Graham* was a "wannabe"—"a barnacle clinging to the outer hull of middle management." *Id.* The record only showed that he sold drugs, worked closely with other people selling drugs, and "would point customers to the people carrying drugs." *Id.* at 1184–85. Here, Luis Ariel had a role in hiring a "coyote" and then exercised some authority over the men subsequently smuggled into the Portland area. Unlike *Graham*, he assumed a greater degree of responsibility for the success of the conspiracy.

Consequently, we cannot say with a firm and definite conviction that Luis Ariel's admissions could not establish by a preponderance of the evidence that he exercised authority over or directed the actions of at least one participant on at least one occasion. *See United States v. Morgan*, 238 F.3d 1180, 1186–87 (9th Cir.2001). Accordingly, the district court's decision to impose a two-level role adjustment pursuant to § 3B1.1(c) was not clearly erroneous and is hereby **AFFIRMED**.

## IV. CONCLUSION

For the foregoing reasons, we hereby **VACATE** the sentences of Jose Meza–

showed that defendant acted as "go-between"

Avila and Jose Juan Cienfuegos–Bernal and **REMAND** for resentencing on an open record. Luis Ariel Cienfuegos–Bernal's sentence is **AFFIRMED**.