FILED

NOT FOR PUBLICATION

JAN 14 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

MICAEL HERNANDEZ-ORTEGA, AKA
Micael Ortega-Hernandes,

Defendant - Appellant.

No. 09-50259

D.C. No. 8:08-cr-00241-CJC-1

MEMORANDUM *

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted December 10, 2009
Pasadena, California

Before: REINHARDT, TROTT and WARDLAW, Circuit Judges.

Because we write solely for the parties, we will address only those facts

necessary to our decision -- albeit in more detail than usual in view of our

colleague's dissent.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

## BACKGROUND

On October 16, 2008, Hernandez-Ortega pleaded guilty pursuant to a Fed. R. Crim. Pro. § 11(c)(1)(C) plea agreement to being an illegal alien found without permission in the United States following deportation. He had been deported in 2002 following his convictions of lewd acts upon children under the age of fourteen, in violation of California Penal Code section 288(a). His convictions resulted in a sentence of ten years in state prison.

In the plea agreement, the parties agreed and stipulated to a base offense level of 8 and a 16-level enhancement pursuant to U.S.S.G. § 2L1.2(b)(1)(A)(ii) for deportation after conviction of a felony that is a crime of violence, to wit his child molesting convictions. As part of the U.S. Attorney's "fast track" program, the parties stipulated to a sentence at the low end of the Guidelines range. This program is designed to extend favorable consideration in immigration related cases to those who accept responsibility and thereby reduce the burden on our judicial system. The parties further agreed "not to seek, argue, or suggest in any way, either orally or in writing, that . . . the Court impose a sentence other than what has been stipulated to by the parties herein."

The Probation Office then formally determined a Guidelines range of 27-33 months and a sentence of 27 months.

The government formally accepted this calculation and, pursuant to the plea agreement, recommended a sentence of 27 months, the low end of the range. Hernandez-Ortega agreed and asked for this sentence. So far, so good -- but not for long.

Subsequent to Hernandez-Ortega's plea and the original plea agreement, we decided en banc Estrada-Espinoza v. Mukasey, 546 F.3d 1147, 1160 (9th Cir. 2008) which held that a conviction pursuant to California's "statutory rape" provisions did not categorically constitute the aggravated felony of "sexual abuse of a minor" within the meaning of 8 U.S.C. § 1101(a)(43). At the hearing set for his sentencing, Hernandez-Ortega suggested pursuant to Estrada-Espinoza, that his prior convictions might warrant only an 8-level upward adjustment, not 16 as stipulated in the plea agreement. Sentencing was continued to allow Hernandez-Ortega to explore this possibility.

Eventually, and because of Estrada-Espinoza, Hernandez-Ortega and the government filed a joint amendment to the original plea agreement. Now, the parties agreed to only an 8-level upward departure in connection with his prior felonies. They further agreed that an appropriate fast-track sentence would include imprisonment at the low end of the advisory Guidelines range.

The Probation Office then calculated a new range of 6-12 months, and recommended a sentence of six months.

Unexpectedly, complications began to set in. At the beginning of Hernandez-Ortega's sentencing hearing, the district court voiced its intention to reject the amended plea agreement because of the court's conclusion that a sentence of six months would be unreasonably low under the 18 U.S.C. § 3553(a) factors. The court then launched into a lengthy discussion regarding Estrada-Espinoza and what the court considered to be that case's creation of "gross disparity" in the sentence of people similarly situated, as well as in this case. The court said,

> I struggle with the gross disparity in people who have been similarly charged and convicted. I try to think about what the purpose of this offense is and what message are we sending to people when it seems people who are not committing as serious prior offenses are getting pretty heavy sentences and then someone like [Hernandez-Ortega] getting a lighter one.

At this point, the court asked for input from the substitute probation officer. The officer acknowledged the value of the fast-track program, but agreed with the court and suggested that under all the circumstances, a six-month sentence did not seem reasonable, saying,

4

Now, my own view of this particular case is more in line with what the court has already articulated. I think this is a troubling case, and I think it does stand out from most fast-track cases when you consider the nature of Mr. Hernandez' prior offense and the actual conduct that occurred; then this recent change in the law in the 9th Circuit, that really turned on a hyper-technical point, that the net effect of which is to equate Mr. Hernandez' prior offense, for guideline enhancement purposes at least, as an offense no more serious than, say, a theft offense, or a felon in possession offense, which is purely a status crime.

So when you look at it from that way, a reality check sort of is needed, and you need to take an honest look at the facts of the case and what actually occurred, and whether or not a six-month sentence is reasonable. And I think when you do that, at least my own analysis of it is that a six-month sentence doesn't seem reasonable.

. . . .

And that's kind of where we are at. And the court has already expressed its frustration, and I certainly see it in very similar terms.

I'm not here to change on the record the probation officer's recommendation because of the policy concerns that I have already expressed, but my own view of the case which the court has asked me to express, that's where I'm at.

The district court then invited the government's response. Faced with the court's and the probation officer's opposition to the parties' agreement, the prosecution acknowledged the court's and the probation officer's concerns regarding the interplay between Estrada-Espinoza and the fast-track program,

5

adding that he had discussed "this matter in depth with the fast-track coordinator" in his office and was told to follow the Estrada-Espinoza case no matter what the result. He ended by saying that although he personally "disagreed" with the outcome, he was obliged "to follow the office policy and to follow the terms and conditions that are in the plea agreement with the defendant." The line up now was two against two, with the government and the defense aligned in favor of a six-month sentence, to which the court and the probation officer were opposed.

The court commended the AUSA for his candor and for sticking with the plea agreement, saying, "I think it would be actually disingenuous on your part . . . to say that the guideline calculation should be what it was before, which is a 27-month. I would lose respect for you. And many U.S. attorneys might do that. You didn't do that. . . . I commend you for it."

The court then reiterated its concerns, remarking that Estrada-Espinoza "is throwing the whole system kind of out of whack, from where I'm sitting." The AUSA then suggested that his office in "future cases" should reconsider extending the fast-track option to cases such as this one.

A lengthy discussion of the relevant sentencing factors then ensued between defense counsel and the court with counsel doing his best to save his client from a

greater sentence. The prosecutor did not participate in this discussion. The court

was unmoved. At this juncture, defense counsel said,

> Although I have a lot of respect for him and I admire him, and I don't think he would do someone [sic] bad faith, I think that [the prosecutor's] statements did amount to a breach today.
> And again, I want to stress I don't think he acted in bad faith, your Honor, but [the prosecutor] basically noted to the court that this sentence is something that he personally disagrees with; that he thinks in the future sentences like this shouldn't be given. If we read between the lines here, I think it's pretty clear what [the prosecutor] is saying, and I think that amounts to a breach, your Honor.

The district court responded, saying,

> I don't see it that way. I mean, the record is what it is. If [the AUSA] said anything, it was actually in response to my questions to him, and so the record is clear, I said what I said to him because, not that I didn't think he would do it, I wanted to make sure that he knew I knew that there is nothing he can say without violating the agreement. And that's why I said, I know your hands are tied because you have agreed to the low end, and I commended him for sticking with the deal, abiding by the deal.

The district court then rejected the plea agreement, gave Hernandez-Ortega

an opportunity to withdraw his guilty plea, and granted his request for a

continuance to consider what to do next.

7

The defendant decided to stay the course. At sentencing, the prosecutor said, "the government's obliged to stand by the plea agreement in this matter, and the government continues to do so today."

Hernandez-Ortega then affirmed the decision to stand by his guilty plea, and the court sentenced him to 27 months plus a period of supervised release.

Ironically, we decided just a few days after Hernandez-Ortega's sentencing -- contrary to all the sentencing assumptions and conclusions by the court and all the parties in this case -- that California Penal Code § 288(a) is indeed a crime of violence under our decision in Estrada-Espinoza for purposes of U.S.S.G. § 2L1.2(b)(1)(A)(ii). United States v. Medina-Villa, 567 F.3d 507, 509 (9th Cir. 2009).

## ANALYSIS

### 1. The Alleged Breach

Our standard of review as to whether the facts demonstrate a breach of a plea agreement is murky at best. United States v. Franco-Lopez, 312 F.3d 984, 988 (9th Cir. 2002). We need not resolve that inconsistency here, because whichever standard we apply -- for an abuse of discretion, clear error, or de novo -- the result is the same. We conclude after carefully examining the record in its entirety that

8

the prosecutor's comments offered in response to the district court's inquiry did not constitute a breach of the plea agreement. We so conclude for five reasons.

First, the discussion and the comments at issue occurred at the request of the court and in the context of the court's unanticipated inclination to reject the favorable disposition agreed to by the parties.

Second, the core of the district court's concern that motivated his request for comments was that our recent decision in Estrada-Espinoza had produced an inappropriate disparity in sentencing in connection with the U.S. Attorney's fast-track program and other cases, as exemplified by the second plea agreement. This was the precise concern addressed in response by the prosecutor.

Third, the prosecution hastened to add to his comments that his office -- for whom he was speaking -- was sticking with the six month sentencing recommendation in this case notwithstanding the court's vocal opposition to it. Read in context, the prosecutor was defending the plea agreement in the face of unbending resistance from the court and the probation officer. There is nothing in this record to suggest that the prosecutor was responsible for the officer's recommendation against the agreement.

Fourth, the prosecutor's "disagree[ment] with the outcome" was directed primarily towards his office's policy, which he had been told to follow -- and he

9

did.  As he told the court, "at this point forward, the U.S. Attorney's Office should reconsider future cases, whether to extend the fast-track option to individuals so situated to avoid an outcome like this."

Fifth, the court did not see the prosecutor's comments as a breach of the agreement.  To the contrary, the court regarded what the prosecutor said as "sticking with the deal."  Under these unusual circumstances, we do not regard the prosecutor's statements or behavior as a breach of his responsibility pursuant to the agreement.  His response to the court's inquiry was not "an 'attempt . . . to influence the district court' to impose a harsher sentence than the one to which the government agreed in the plea agreement." United States v. Allen, 434 F.3d 1160, 1175 (9th Cir. 2006) (quoting United States v. Mondragon, 228 F.3d 978, 980-81 (9th Cir. 2000).  See also United States v. Quach, 302 F.3d 1096, 1101 (9th Cir. 2002).  Moreover, in terms of the language of the agreement, he did not "suggest" that the court do anything other than sentence the defendant to six months.  Also, "'[a] plea agreement does not bar the government from honestly answering the district court's questions.  To the contrary, honest response of the government to direct judicial inquiry is a prosecutor's professional obligation that cannot be barred, eroded or impaired by a plea agreement.'" Allen, 434 F.3d at 1175

10

(quoting United States v. Maldonado, 215 F.3d 1046, 1052 (9th Cir. 2000) (alteration in original).

The court's understanding of the prosecutor's comments to be consistent with the plea agreement bolsters our independent conclusion.  Id. (citing United States v. Ahn, 231 F.3d 26 (D.C. Cir. 2000)) (weighing the district court's understanding in deciding that the prosecutor's behavior did not constitute a breach); Salve Regina College v. Russell, 499 U.S. 225, 232 (1991) ("Independent appellate review necessarily entails a careful consideration of the district court's legal analysis, and an efficient and sensitive appellate court at least will naturally consider this analysis in undertaking its review."); United States v. Flores-Payon, 942 F.2d 556, 560 (9th Cir. 1991) ("[A]n alleged breach of the plea agreement is precisely the type of claim that a district court is best situated to resolve.").

## 2.    The Sentence

Finally, the defendant argues that his 27-month sentence was an abuse of discretion, claiming that it was substantively unreasonable.  We disagree.  The court followed to the letter Fed. R. Crim. Pro. § 11(c)(5) in rejecting this agreement and advising the defendant that unless the plea was withdrawn, a less favorable sentence would be forthcoming.  Moreover, the reasons given both for doing so

and for imposing a 27-month sentence were well supported by the sentencing record before the court.

**AFFIRMED**

09-50259 USA v. Hernandez-Ortega

REINHARDT, Circuit Judge, dissenting:

I have no doubt that the plea agreement was breached in this case. The district court, aware of the government's obligations under the agreement, but unhappy with its position, expressed its dissatisfaction and asked the prosecutor to give his own personal opinion. The prosecutor answered the judge's question honestly and, in doing so, expressed his disagreement with the recommendation that his office was bound to make. The district judge then complimented the prosecutor on his honesty.

The district judge should not have asked the prosecutor to express a personal view that might well differ from that of the government. At the same time, faced with the court's question, the prosecutor should either have simply said that he adhered to the plea agreement or declined to make any further comment. Instead, by expressing a personal view contrary to that of the government, he violated the terms of the amended plea agreement. In that agreement, the government had promised "not to seek, argue or suggest *in any way*, either orally or in writing . . . that the court impose a sentence other than what ha[d] been stipulated to." (Emphasis added.) Despite the terms of the agreement, the prosecutor *did* suggest that a higher sentence than that previously agreed upon by the parties would be

more appropriate. He informed the court that he "share[d] the court's concern and the thoughts and statements of the probation office" that the sentence proposed in the plea agreement was too lenient and added that he "personally disagree[d] with the outcome." He also told the court that he thought that "at this point forward, the U.S. Attorney's office should reconsider future cases, whether to extend the fast-track option to individuals so situated to avoid an outcome like this." The implications of his statement are clear: a higher sentence was warranted. We have held repeatedly that "[a] plea agreement is a contract; the government is held to the literal terms of the agreement." *United States v. Mondragon*, 228 F.3d 978, 980 (9th Cir. 2000) (*citing United States v. Johnson*, 187 F.3d 1129, 1134 (9th Cir. 1999); *United States v. Baker*, 25 F.3d 1452, 1458 (9th Cir. 1994)). It is also elementary that the terms of a contract must be carried out in good faith. Here, the prosecutor's statements violated the provision of the plea agreement requiring that the government refrain from "suggest[ing] in any way" that a different sentence should be imposed.

The majority contends that because the prosecutor prefaced his remarks with the assertion that he was obliged "to follow the office policy and to follow the terms and conditions that are in the plea agreement with the defendant," [ER 10] the prosecution and defense were "aligned in favor of a six-month sentence, to

2

which the court and probation officer were opposed." [Mem. Dispo. 6] Such an interpretation of the prosecutor's "alignment" is not borne out by the transcript of the sentencing hearing. The prosecutor's statements are perfectly clear. He said that he "share[d] the court's concern and the thoughts and statements of the probation office," thereby aligning himself with the court and the probation officer, both of whom expressed the view that the proposed sentence was inadequate. The court could have been left in no doubt as to the prosecutor's personal belief that a greater sentence than that set forth in the plea agreement should be imposed. Such an expression of personal belief by a prosecutor most certainly undermines the government's recommendation, notwithstanding the prosecutor's later statement that he was required to recommend the imposition of the sentence to which the government had agreed. The government breaches the agreement when its representative informs the judge that he believes the sentence is not sufficiently severe, but that he is nevertheless bound to recommend it. The prosecutor *is* the government when he appears at the sentencing. Recommending a sentence and then stating that it is inadequate is not recommending it in good faith, if at all.

It is of course, the government's breach and the government's good faith that is relevant here, not the individual prosecutor's. I believe that the individual prosecutor meant well, but that he was ill served by the district court's inquiry.

3

Certainly, the prosecutor did not intend to breach the plea agreement. Still, well-intentioned or not, his answers to the district court resulted in the government's breach.

The majority's suggestion that we should be swayed by the district court's determination that the prosecutor did not breach the plea agreement is far from persuasive. The district court invited and encouraged, indeed caused, the breach. The district judge made it clear that he thought the agreed-upon sentence too lenient, and then invited the prosecutor to give his individual opinion of its appropriateness. "The court's understanding of the prosecutor's comments" [Mem. Dispo 11] are irrelevant when the court itself is so thoroughly implicated in the breach of the plea agreement. "Independent review . . . does not admit of unreflective reliance on a lower court's inarticulable intuitions." *Salve Regina College v. Russell*, 499 U.S. 225, 233 (1991). The district court's "intuitions" in this case were obviously influenced by its own questionable actions. In such circumstances the district court's understanding can have no influence on the reviewing court's independent conclusion. Whatever the district court's interpretation of the prosecutor's remarks, "[t]he integrity of our judicial system requires that the government strictly comply with its obligations under a plea agreement." *Mondragon*, 228 F.3d at 981. It failed to do so in this case.

4

Accordingly, I would vacate the sentence, assign the resentencing to a different judge, and direct the government to comply with the plea agreement.

I dissent.